1  MARK JOSEPH KENNEY (State Bar No. 87345)
   mjk@severson.com
2  JOHN B. SULLIVAN (State Bar No. 96742)
   jbs@severson.com
3  SUNNY S. HUO (State Bar No. 181071)
   ssh@severson.com
4  SEVERSON & WERSON
   A Professional Corporation
5  One Embarcadero Center, Suite 2600
   San Francisco, CA  94111
6  Telephone:  (415) 398-3344
   Facsimile:  (415) 956-0439
7
   Attorneys for Defendant
8  Homecomings Financial, LLC

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13 | LAURA THOMPSON, etc.,                    | Case No.:  C 07 4046 WDB

14 |          Plaintiff,                       | **MOTION TO DISMISS AND STRIKE PORTIONS OF COMPLAINT AND**

15 |     vs.                                    | **SUPPORTING MEMORANDUM**

16 | HOMECOMINGS FINANCIAL, LLC,               | Hearing Date:      November 28, 2007
   |                                           | Time:              1:30 p.m.
17 |          Defendants.                       | Courtroom:         4
   |                                           | Judge:             Wayne D. Brazil
18 |                                           | Complaint Date:    August 7, 2007
   |                                           | Trial Date:        Not Set

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION TO DISMISS AND STRIKE**

Please take notice that on November 28, 2007, at 1:30 p.m., or as soon thereafter as

counsel may be heard in Courtroom 4 of the above-entitled court at 1301 Clay Street, Oakland,

California before the Honorable Wayne D. Brazil, defendant Homecomings Financial, LLC will,

and it hereby does, move:

1.     Pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the second cause of action on the

grounds that

      a.     The California Consumers Legal Remedies Act (Civ. Code, §1750 et seq.)

does not apply to transactions, such as those alleged in the complaint, involving only the

extension of credit; and

      b.     Plaintiff has not alleged facts showing a violation of the Consumers Legal

Remedies Act's specific prohibitions.

2.     Pursuant to Fed. R. Civ. P. 12(f) to strike the complaint's following allegations:

      a.     Paragraph 27, the class definition, because it improperly creates a "fail-

safe" class, requiring a merits determination to decide class membership.

      b.     Paragraphs 44 and 47 because they seek compensatory and punitive dam-

ages and attorney fees, relief that is not available under California Business and Profes-

sions Code § 17200 et seq.

      c.     Paragraphs 1 and 5 of the prayer, which seek compensatory and punitive

damages, relief that is not available under California Business and Professions Code

§ 17200 et seq. or §17500 et seq., and which plaintiff cannot recover under the Consumers

Legal Remedies Act for the reasons mentioned in the accompanying motion to dismiss.

      d.     Paragraph 4 of the prayer which seeks statutory damages, relief that is not

available under California Business and Professions Code §17500 et seq.

Defendant brings this motion pursuant to Fed. R. Civ. P. 12(b)(6) and (f) on the grounds

stated above.  The motion is based on this notice, the accompanying memorandum of points and

authorities, the complaint, and all other records and papers on file in this action.

- 2 -

1     DATED:  October 18, 2007

SEVERSON & WERSON
A Professional Corporation

2

3

By:             /S/
4                                                   Sunny S. Huo

5                                     Attorneys for Defendant
Homecomings Financial, LLC

6

7    I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Dismiss and Strike Portions of Complaint
Case No.:  C 07 4046 WDB

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

In this putative class action, plaintiff Laura Thompson claims that in making home mortgage loans defendant Homecomings Financial, LLC ("Homecomings") does not properly disclose to prospective borrowers that Homecomings will pay a yield-spread premium ("YSP") to the borrowers' brokers.

Homecomings moves to dismiss Thompson's second cause of action under California's Consumers Legal Remedies Act (Civ. Code, §1750 et seq.; "CLRA") for two reasons.  First, the act does not apply to the extension of credit, such as the making of a home mortgage loan. Thompson does not allege that Homecomings sold any good or service, but only made home mortgage loans.  Second, Thompson fails to allege conduct that violates the CLRA's specific prohibitions, even if the transaction were otherwise covered by the act.  For both reasons, Thompson states no claim under the act, and her second cause of action should be dismissed.

Homecomings moves to strike the complaint's paragraph defining the putative class.  The paragraph improperly defines the class in terms of the merits, counting as class members only those borrowers to whom "Homecomings failed to adequately disclose … the fact and amount of the [YSP] in writing" in the good faith estimate, HUD-1 or both.  (Compl., ¶27(d).)  Such a class definition improperly requires the Court to decide the merits to determine class membership and creates a "fail-safe" class that has members only if plaintiff wins on the merits.

Finally, Homecomings moves to dismiss several paragraphs of the complaint and prayer that seek compensatory, statutory, and punitive damages.  Damages are not recoverable under California Business and Professions Code §17200 et seq. (the "Unfair Competition Law" or "UCL") or §17500 et seq. (the "False Advertising Law" or "FAL"), the statutes on which Thompson bases her first and third causes of action.  Thompson cannot recover damages under the CLRA because she fails to state a claim under that statute.

For each of these reasons, the Court should dismiss Thompson's second cause of action and strike paragraphs 27, 44, and 47 of the complaint and paragraphs 1, 4, and 5 of its prayer.

## II.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Should the Court dismiss Thompson's second cause of action because the CLRA does not apply to credit transactions, such as the alleged home mortgage loans?

2.      Should the Court dismiss Thompson's second cause of action because the complaint does not allege facts showing that Homecomings engaged in any practice forbidden by Civil Code §1770?

3.      Should the Court strike paragraph 27 of the complaint because it alleges an improper "fail-safe" class definition requiring decision on the merits to determine class membership?

4.      Should the Court strike paragraphs 44 and 47 of the complaint and paragraphs 1, 4, and 5 of its prayer because the relief those paragraphs seek—actual and punitive damages and attorney fees—that is not recoverable on plaintiff's claims under the UCL and FAL and because plaintiff does not allege a viable claim under the CLRA?

## III.

## THE COMPLAINT'S PERTINENT ALLEGATIONS

According to the complaint,[1] Homecomings "engages in residential mortgage lending" in California, offering loan programs under which independent mortgage brokers refer prospective borrowers to Homecomings for loans.  (Compl., ¶8.)

The brokers are compensated, in part by a YSP that Homecomings pays.  (*Id*., ¶¶2, 3, 9.)

> A yield spread premium, or "YSP," is a lump sum paid by a lender
> to a broker at closing when the loan originated by the broker bears
> an above-par interest rate. As HUD has explained it:

> Payments to brokers by lenders, characterized as yield
> spread premiums, are based on the interest rate and points of
> the loan entered into as compared to the par rate offered by
> the lender to the mortgage broker for that particular loan
> (e.g., a loan of 8% and no points where the par rate is 7.50%
> will command a greater premium for the broker than a loan
> with a par rate of 7.75% and no points). In determining the

---

[1]      As a motion to dismiss or strike is based on the complaint's allegations, Homecomings states those allegations without comment now as to their truth or falsity and without waiving its right to contest their truth later.

- 4 -

1

2
price of a loan, mortgage brokers rely on rate quotes issued
by lenders, sometimes several times a day. When a lender

3
agrees to purchase a loan from a broker, the broker receives
the then applicable pricing for the loan based on the differ-
ence between the rate reflected in the rate quote and the rate

4
of the loan entered into by the borrower....

5
Lender payments to mortgage brokers may reduce the up-
front costs to consumers. This allows consumers to obtain

6
loans without paying direct fees themselves. Where a broker
is not compensated by the consumer through a direct fee, or
is partially compensated through a direct fee, the interest

7
rate of the loan is increased to compensate the broker or the
fee is added to principal. In any of the compensation meth-

8
ods described, all costs are ultimately paid by the consumer,
whether through direct fees or through the interest rate.

9

10
*Shuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1007-08 (9th Cir. 2002), quoting HUD, Real

Estate Settlement Procedures Act (RESPA) Statement of Policy 1999-1 Regarding Lender Pay-

11
ments to Mortgage Brokers, 64 Fed.Reg. 10080, 10085 (March 1, 1999).

12
       As indicated in the HUD's 1999 Statement of Policy, the YSP "correlates with a higher

13
interest rate than the borrower would otherwise pay on the loan.  (Compl., ¶9.)

14
       Thompson claims that under the Real Estate Settlement Practices Act and its implement-

15
ing regulations, Homecomings is required to disclose any YSP in a Good Faith Estimate that it

16
must give the prospective borrower within three days of receiving his or her loan application.

17
(*Id.*, ¶11.)

18
       According to Thompson, Homecomings "regularly" or "routinely" violates this supposed

19
legal requirement by disclosing the YSP, if at all, only at the closing of the loan.  (*Id.*, ¶¶4, 13, 19,

20
21-24.)  Belated or non-disclosure, Thompson says, deprives borrowers of the ability to negotiate

21
for a lower interest rate loan.  (*Id.*, ¶4.)

22
       Based on these spare factual allegations, Thompson attempts to allege three causes of

23
action: the first under the UCL, the second under the CLRA, and the third under the FAL.

24

25

26

27

28

- 5 -

**1**

**IV.**

**2**

**THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED**

**3**        The Court should dismiss Thompson's second cause of action under the CLRA for two

**4** reasons:  First, the CLRA does not apply to transactions, such as the making of home mortgage

**5** loans, that involve only the extension of credit, not the sale of goods or services.  Second,

**6** Thompson has not alleged facts showing a violation of the CLRA's specific prohibitions.

**7**        **A.        The CLRA Does Not Apply To Credit Transactions**

**8**        "[N]either the express text of CLRA nor its legislative history supports the notion that

**9** credit transactions separate and apart from any sale or lease of goods or services are covered

**10** under the act."  *Berry v. American Express Pub., Inc.,* 147 Cal.App.4th 224, 233, 54 Cal.Rptr.3d

**11** 91 (2007).

**12**        The CLRA's scope is discerned first from its statutory text.  *Freeman v. DirecTV, Inc.,*

**13** 457 F.3d 1001, 1004 (9th Cir. 2006) ("The starting point for [the] interpretation of a statute is

**14** always its language."); *Shirk v. Vista Unified School Dist.,* 42 Cal.4th 201, 211, 64 Cal.Rptr.3d

**15** 210 (2007) ("We begin with the statutory language because it is generally the most reliable indi-

**16** cation of legislative intent.")

**17**        The CLRA's central provision, Civ. Code, §1770, bans various specified practices if

**18** "undertaken by any person in a transaction intended to result or which results in the sale or lease

**19** of goods or services to any consumer."  If the transaction does not involve the sale or lease of

**20** goods or services, §1770, and the rest of the CLRA's provisions, do not apply.  Thus, for the

**21** CLRA to apply to a loan or other extension of credit, that type of transaction must involve

**22** "goods" or "services," as the CLRA specially defines those terms.

**23**        A loan is not a sale or lease of "goods," which the CLRA defines to mean "tangible chat-

**24** tels."  Civ. Code, §1761(a).  "The extension of credit is not a tangible chattel."  *Berry,*

**25** 147 Cal.App.4th at 229.

**26**        Nor is a loan or other extension of credit a sale or lease of "services," a term that the

**27** CLRA defined to mean "work, labor, and services for other than a commercial or business use."

**28**

- 6 -

1   Civ. Code, §1761(b).  Credit is not a "service" within the CLRA's definition.  A loan involves no

2   work or labor or any other "service," but only the use of the lender's money.

3       The CLRA's legislative history confirms the fact that it does not apply to extensions of

4   credit.

> Early drafts of section 1761, subdivision (d), defined "Consumer"
> as "an individual who seeks or acquires, by purchase or lease, any
> goods, services, *money*, or *credit* for personal, family or household
> purposes." (Assem. Bill No. 292 (1970 Reg. Sess.) Jan. 21, 1970,
> italics added.) But the Legislature removed the references to
> "money" and "credit," before CLRA's enactment, and they do not
> appear in the current version.

9   *Berry*, 147 Cal.App.4th at 230.

10      By deleting "money" and "credit" from the CLRA's definitional sections, the Legislature

11  evidenced its intent to exclude loans from the act's coverage.  "[T]he Legislature's deletion of the

12  terms 'money' and 'credit' from CLRA's definition of 'consumer' strongly counsels us not to

13  stretch the provision to include extensions of credit unrelated to the purchase of any specific good

14  or service."  *Id.* at 231.  "[C]ourts must not interpret a statute to include terms the Legislature

15  deleted from earlier drafts."  *Id.*

16      Other changes made during the Legislature's consideration of the CLRA's early drafts

17  confirm that deletion of the terms "money" and "credit" was intended to narrow the act's scope.

> For example, an early draft of section 1780 gave standing to "[a]ny
> consumer who *obtains credit*, or purchases or leases, or agrees to
> purchase or lease, goods or services primarily for personal, family,
> or household purposes, and who thereby suffers any damage...."
> (Italics added.) The draft's placement of the phrase "obtains credit"
> demonstrates the Legislature viewed the extension of credit as a
> separate activity from purchasing or leasing goods and services,
> rather than an example of it. The final version of section 1780 de-
> leted the specific references to activities covered under the act, and
> it now confers standing on: "Any consumer who suffers any dam-
> age as a result of the use or employment by any person of a method,
> act, or practice declared to be unlawful by Section 1770...."

*Id.*, at 232.

26      As *Berry* points out, §1770 also evidences the Legislature's intent that the CLRA not

27  extend to credit transactions.  "Most of the matters in section 1770 appear directed toward the

28  purchase and lease of tangible goods and services, and none suggests the statutory language cov-

- 7 -

1  ered extensions of credit unrelated to a specific sale or lease transaction." *Id*.  Moreover, the sec-

2  tion's above-quoted introductory phrase, limiting the section's prohibitions to practices under-

3  taken in connection with the sale or lease of goods or services, is considerably narrower in scope

4  than the section's initial draft, which would have banned the specified practices if "undertaken by

5  any person in the conduct of any trade or commerce ...." *Id.*

6        Other recent state and federal decisions adopt *Berry's* careful analysis of the CLRA's text

7  and legislative history as well as its conclusion that the act does not apply to credit transactions.

8  *Van Slyke v. Capital One Bank*, 2007 WL 1655641 at *3-4 (N.D. Cal. 2007) (CLRA does not

9  apply to credit cards); *Augustine v. FIA Card Services, N.A.,* 485 F.Supp.2d 1172, 1174-1175

10  (E.D. Cal. 2007); *Fairbanks v. Superior Court*, 154 Cal.App.4th 435, 441-44, 64 Cal.Rptr.3d 623

11  (2007) (CLRA does not apply to insurance); *see also McKell v. Washington Mut., Inc.,*

12  142 Cal.App.4th 1457, 1488, 49 Cal.Rptr.3d 227 (2006) (CLRA does not apply to home loans).

13        The one decision that has bucked this trend, *Jefferson v. Chase Home Fin. LLC*, 2007 WL

14  1302984 (N.D.Cal. 2007), is inapposite here for the same reason Judge Alsup found it "not on

15  point" in *Van Slyke,* 2007 WL 1655641 at *4:  *Jefferson* "held that the CLRA did apply to

16  financial services connected with mortgages, specifically to a program under which debtors were

17  able to prepay their mortgages without penalty.  The claim under the CLRA was not directed to

18  the extension of credit itself.  It was directed at the defendant's prepaid mortgage practices, a

19  financial service provided to debtors …."[2]

20        Here, Thompson complains only about the loan she got, allegedly at a higher interest rate

21  because she supposedly was not informed, on a timely basis, about the YSP paid her broker.  She

22  mentions no "service"; just the extension of credit.  Without facts to show that the disputed trans-

23

24

25

26  [2]    *Hitz v. First Interstate Bank,* 38 Cal.App.4th 274, 286-88, 44 Cal.Rptr.2d 890 (1995) is
distinguishable for the same reason.  *Hitz* held the CLRA applied to a bank's practice of charging

27  late and overlimit fees on credit cards because the cards had a convenience feature (allowing the
holder to buy without carrying or using cash), a service apart from the cards' use as a means for

28  the extension of credit.  A home mortgage loan, like those involved in this case, offers no such
"convenience feature."

- 8 -

1  action was intended to or did result in the sale or lease of goods or services, Thompson's second

2  cause of action fails to allege a viable claim under the CLRA.[3]

3  **B.    Thompson Has Not Alleged Violation Of The CLRA's Prohibitions**

4  Unlike California's UCL, the CLRA does not prohibit all "unfair" acts—even in transac-

5  tions to which the CLRA applies.  Instead, the CLRA's key provision, Civ. Code, §1770, declares

6  19 specifically defined practices to be unlawful, and §1780 gives a private right of action to con-

7  sumers injured by those specific practices.  Thompson fails to state a viable claim under these

8  provisions because she alleges no facts showing that Homecomings committed any of the

9  practices forbidden by section 1770.

10  Paragraph 53 of Thompson's complaint avers, in conclusory fashion, that Homecomings

11  violated Civil Code §1770(a)(1)-(3), (5), (9), (10), (14), (16), (18), and (19).  No facts are stated

12  to show how Homecomings acted in a manner so as to violate any of these provisions.  The alle-

13  gation is mere "labels and conclusions."  It does not meet Fed. R. Civ. P. 8's requirement of a

14  statement of the grounds on which plaintiff is entitled to relief.  Instead, the complaint must allege

15  *facts* that "raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965.

16  Moreover, non-disclosure of a probable YSP payment—the gist of what Thompson claims

17  Homecomings did wrong—is not conduct that violates the subparts of §1770(a) cited in the com-

18  plaint's paragraph 53.  For example, §1770(a)(1)-(3) and (5) ban passing off goods or services as

19  those of another, misrepresenting the source, sponsorship or approval of goods or services, or

20  affiliation, connection or association of the seller.  Thompson does not allege that Homecomings

21  engaged in any such conduct.  She avers a non-disclosure of the YSP, not an affirmative misrep-

22  resentation of source or affiliation.

23  _____

[3]    Thompson's conclusory allegations that her dealings with Homecomings were "transac-
24  tions" as defined in Civil Code §1761(e) and that Homecomings performed "services" for her, as
defined by Civil Code §1761(b) are insufficient to avoid dismissal. (See Compl., ¶¶51, 52.)  As
25  the Supreme Court has recently re-emphasized, "a plaintiff's obligation to provide the 'grounds'
of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recita-
26  tion of the elements of a cause of action will not do…. Factual allegations must be enough to raise
a right to relief above the speculative level …." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127
27  S.Ct. 1955, 1964-65 (2007).  Allegations of legal conclusions such as those recited in paragraphs
51 and 52 of Thompson's complaint no longer suffice, if they ever did, to meet the pleader's bur-
28  den; instead, facts must be averred to show that those elements of Thompson's claim are, in fact,
met. *Mitan v. Feeney*, 497 F.Supp.2d 1113, 1126 (C.D. Cal. 2007).

- 9 -

1      Similarly, §1770(a)(9) and (10) ban advertising goods or services either without the intent

2  to sell them as advertised or to supply reasonably expectable demand.  Thompson does not allege

3  that Homecomings failed to supply any advertised loans to those who applied and qualified for

4  them.

5      Section 1770(a)(14) and (16) ban affirmative misrepresentations about the rights, reme-

6  dies or obligations a transaction confers or involves or saying the subject of the transaction has

7  been supplied when it has not been.  Thompson does not claim Homecomings misstated Thomp-

8  son's rights, obligations or remedies under her loan.  Instead, she claims that Homecomings did

9  *not* tell her that it was paying her broker a YSP.  Likewise, Thompson does not contend Home-

10  comings failed to supply the "subject" of her transaction—a home mortgage loan—or told her

11  that the loan had been supplied before it actually was.

12      Section 1770(a)(18) bans misrepresenting a salesperson's authority to negotiate final

13  terms of the transaction.  Thompson alleges no such misstatement by Homecomings.

14      Section 1770(a)(19) bans inserting unconscionable provisions in contracts.  Thompson

15  does not claim any provision of her loan was unconscionable.

16      In short, Thompson does not allege facts which show the violation of any of the cited sub-

17  parts of Civil Code §1770.  Hence, Thompson fails to state a claim under that section or the rest

18  of the CLRA.

19

20                                         **V.**

21     **THOMPSON'S "FAIL-SAFE" CLASS DEFINITION
       AND IMPROPER DAMAGE ALLEGATIONS SHOULD BE STRICKEN**

22      **A.    Thompson's Class Definition Should Be Stricken**

23      Paragraph 27 of the complaint, Thompson's class definition, should be stricken because

24  the paragraph improperly makes class membership turn on the merits of her claims.

25      As the Manual for Complex Litigation cautions, "The order defining the class ***should***

26  ***avoid*** subjective standards (e.g., a plaintiff's state of mind) or ***terms that depend on resolution of***

27  ***the merits*** (***e.g., persons who were discriminated against***)."  Manual for Complex Litig., §21.222

28  (4th ed.) (fns. omitted; emphasis added).

- 10 -

1    There are two reasons for this rule.  First, such so-called "fail-safe" class definitions re-

2   vive in another form the fundamentally unfair procedure of "one-way intervention" If the defen-

3   dant prevails, there are no members of a class that is defined by a putative class member's success

4   on the merits.  So no one is bound by a defense judgment.  But, if plaintiffs win, there are many

5   members of a class defined by success on the merits.  "The … class definition, if allowed, would

6   result in a "fail-safe" class, a class which would be bound only by a judgment favorable to plain-

7   tiffs but not by an adverse judgment." *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980).[4]

8    The 1966 Amendment to Fed. R. Civ. P. 23 was adopted precisely to end this sort of

9   heads-I-win-tails-you-lose procedure.  "This situation—the potential for so-called 'one-way in-

10   tervention'—aroused considerable criticism upon the ground that it was unfair to allow members

11   of a class to benefit from a favorable judgment without subjecting themselves to the binding

12   effect of an unfavorable one."  *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 547, 94 S.Ct.

13   756, 38 L.Ed.2d 713 (1974) (fn. omitted).

14    Second, a class definition that depends on the merits requires the Court, inappropriately,[5]

15   to evaluate the merits of the case at the class certification stage to, among other things, determine

16   whether the class satisfies Fed. R. Civ. P. 23(a)(1)'s numerosity requirement.

17
> [The class] definition is insufficient, in that it would require the
> court to determine whether a person's constitutional rights had
18
> actually been violated in order to determine whether that person
> was a class member.  In essence, the court would have to pass on
19
> the merits of the claim at the class certification stage in order to tell
> who was included in the class.  The Supreme Court has held, how-
20
> ever that courts may not consider the merits of the claim at certifi-
> cation.
21

*Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63-64 (D. Nev. 1985) (citation to *Eisen* omitted).[6]

22

23

24   [4]    "Certifying a fail-safe class inevitably creates one-sided results.  If the defendant is found
liable, class membership is then ascertainable and the litigation comes to an end.  A determination
that the defendant is not liable, however, obviates the class, thereby precluding the proposed class
25   members from being bound by the judgment.  We do not support such a result when '[r]ule [23]
was never meant to be an exception to the rules of res judicata or to provide a risk-free method of
26   litigation.' "  *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 405 (Tex. 2000) (citation omitted).

27   [5]    A class certification decision may not be based on a court decision or even preliminary
view of the merits of the suit.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140,
40 L.Ed.2d 732 (1974).
28

[6]    *Accord:  Bostick v. St. Jude Medical, Inc.,* 2004 WL 3313614 at *16 (W.D. Tenn. 2004);

1    Also, a merits-based class definition destroys the vaunted efficiency of a class action.

2  "Many of the streamlining benefits that are the hallmark of a proper class action would be lost in

3  the morass of individualized determinations of class membership."  *Kline,* 196 F.R.D. at 268.

4    Thompson's proposed class definition suffers from all these faults because it allows as

5  class members only borrowers to whom Homecomings gave "inadequate" disclosures regarding

6  the YSP.  Specifically, paragraph 27(d) allows a borrower into the class only if, in connection

7  with his or her loan

8
9    Homecomings **failed to adequately disclose** to the borrower the fact
     and amount of the premium in writing on the Good Faith Estimate,
     prior to the time the borrower sign[ed] final closing documents, or
     failed to disclose the premium on the HUD-1 Settlement Statement,
10   or failed to do both ….

11  (Emphasis added.)

12    Whether Homecomings "adequately" disclosed the YSP on a GFE or HUD-1 is the ulti-

13  mate merits issue in this case.  To make class membership turn on the decision of that merits issue

14  improperly requires the Court to assess the merits at the class certification stage and creates the

15  type of "fail-safe" class condemned by the above-cited authorities.

16    Paragraph 27(e) exacerbates the class definition's problems by adding the further class

17  membership qualification that Homecomings must have received the loan application more than

18  three days before the closing "such that Homecomings could have informed, or caused the broker

19  to inform, the borrower of the amount of the premium in time to reasonably allow the borrowers

20  to make informed decisions regarding the loan."

21    It will be difficult enough to determine whether Homecomings received a loan application

22  more than three days before closing.  But to decide whether the interval between receipt of appli-

23  cation and loan closing was sufficient to allow Homecomings an adequate opportunity to inform

24  the borrower of the YSP in enough time to allow the borrower an opportunity to make informed

25

26  *Kline v. Security Guards, Inc.*, 196 F.R.D. 261, 266-68 (E.D. Pa. 2000); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 445 (E.D. Pa. 2000); *Wansrath v. Time Warner Entertainment*, 1997 WL
27  122815 at *3 (S.D. N.Y. 1997); *Forman v. Data Transfer*, 164 F.R.D. 400, 403 (E.D. Pa. 1995); *Luedke v. Delta Airlines*, 155 B.R. 327, 332 (S.D. N.Y. 1993); *Armstrong v. Chicago Park Dist.*,
28  117 F.R.D. 623, 626-27 (N.D. Ill. 1987); *Dunn v. Midwest Buslines, Inc.*, 94 F.R.D. 170, 172 (E.D. Ark. 1982).

- 12 -

1  decisions about the loan will require a mini-trial of each (or at least many) borrower's individual

2  circumstances just to see if they meet the criteria for class membership.  The vaunted efficiencies

3  of class litigation "would be lost in the morass of individualized determinations of class member-

4  ship."  *Kline,* 196 F.R.D. at 268.

5       The class definition is improper and should be stricken.

6       **B.       Thompson's Improper Damage Allegations Should Be Stricken**

7       "A UCL action is equitable in nature; damages cannot be recovered.  … [U]nder the UCL,

8  '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.' "[7]  "Plaintiffs may

9  not receive damages, much less treble damages, or attorney fees."[8]  The same is true under the

10 FAL:  private plaintiffs may not recover damages or civil penalties under Business and Profes-

11 sions Code section 17500.[9]

12      Part of her UCL claim, paragraphs 44 and 47 of Thompson's complaint allege that plain-

13 tiff and class members have suffered damage from Homecomings' allegedly wrongful conduct

14 and that Homecomings is therefore liable for "damages in amounts to be proven at trial, including

15 attorneys' fees … and exemplary damages provided by law."  Under the authorities just quoted,

16 damages are not recoverable under the UCL.  Nor are attorney fees.  Accordingly, these allega-

17 tions are irrelevant to Thompson's first cause of action and should be stricken.

18      Paragraphs 1, 4 and 5 of the prayer seek relief in the form of actual damages, "[s]tatutory

19 damages as provided by California Business and Professions Code §17500 et seq.," and

20 "[e]xemplary and punitive damages as provided by California Business and Professions Code

21 §17200 et seq. and by CLRA §1780 et seq."

22

23

---

24 [7]    *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144, 131 Cal.Rptr.2d 29 (2003), *citing Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th

25 163, 179-80, 83 Cal.Rptr.2d 548 (1999); *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538 (1992); *accord: E.W. French & Sons, Inc. v. General Portland, Inc.*,

26 885 F.2d 1392, 1401-02 (9th Cir. 1989).

   [8]    *Cel-Tech Communications, Inc.,* 20 Cal.4th at 179; *accord:  America Online, Inc. v. Supe-*

27 *rior Court,* 90 Cal.App.4th 1, 15 n. 10, 108 Cal.Rptr.2d 699 (2001).

   [9]    *Brown v. Allstate Ins. Co.*, 17 F.Supp.2d 1134, 1140 (S.D. Cal. 1998); *Chern v. Bank of*

28 *America*, 15 Cal.3d 866, 875, 127 Cal.Rptr. 110 (1976).

- 13 -

These paragraphs should be stricken from the prayer for the same reason. Damages are not recoverable under either the UCL or FAL (i.e., Bus. & Prof. Code, §§17200, 17500)—whatever the label placed on the damages: actual, statutory, exemplary, or punitive.

Actual and punitive damages are recoverable under the CLRA (Civ. Code, §1780(a)(1), (4)), but for the reasons stated at pages 7-11 above, Thompson has pled no viable claim under the CLRA.

Therefore, paragraphs 1, 4 and 5 should be stricken from the prayer, and paragraphs 44 and 47 should be stricken from the body of the complaint.

## VI.

## CONCLUSION

For the reasons stated above, the Court should dismiss the second cause of action and strike paragraphs 27, 44, and 47 from the complaint and paragraphs 1, 4, and 5 of its prayer.

DATED:  October 18, 2007                      SEVERSON & WERSON
                                              A Professional Corporation


                                              By: _____/S/_____
                                                              Sunny S. Huo

                                              Attorneys for Defendant
                                              Homecomings Financial, LLC

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

- 14 -

## TABLE OF CONTENTS

*Page*

1  NOTICE OF MOTION TO DISMISS AND STRIKE.................................................................1

2  MEMORANDUM OF POINTS AND AUTHORITIES.............................................................4

3  I.    INTRODUCTION .................................................................................................3

4  II.   STATEMENT OF ISSUES TO BE DECIDED ................................................4

5  III.  THE COMPLAINT'S PERTINENT ALLEGATIONS ....................................4

6  IV.   THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED...................6

7        A.    The CLRA Does Not Apply To Credit Transactions .............................6

8        B.    Thompson Has Not Alleged Violation Of The CLRA's Prohibitions ...................9

9  V.    THOMPSON'S "FAIL-SAFE" CLASS DEFINITION
10          AND IMPROPER DAMAGE ALLEGATIONS SHOULD BE STRICKEN ..................10

11       A.    Thompson's Class Definition Should Be Stricken ...............................10

12       B.    Thompson's Improper Damage Allegations Should Be Stricken ......................13

13 VI.   CONCLUSION ..................................................................................................14

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07955/0024/644754.1

## TABLE OF AUTHORITIES

*Page(s)*

**1**  *Cases*

**2**  *Adashunas v. Negley*, 626 F.2d 600 (7th Cir. 1980)......................................................................11

**3**  *American Pipe & Constr. Co. v. Utah*,
          414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) ....................................................11
**4**

       *America Online, Inc. v. Superior Court*,
**5**      90 Cal.App.4th 1, 108 Cal.Rptr.2d 699 (2001) .........................................................13

**6**  *Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623 (N.D. Ill. 1987) ...........................................12

**7**  *Augustine v. FIA Card Services, N.A.*,
          485 F.Supp.2d 1172 (E.D. Cal. 2007) ........................................................................8
**8**

       *Bank of the West v. Superior Court*,
**9**      2 Cal.4th 1254, 10 Cal.Rptr.2d 538 (1992) ..............................................................13

**10** *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955 (2007).........................................9

**11** *Berry v. American Express Pub., Inc.*,
          147 Cal.App.4th 224, 54 Cal.Rptr.3d 91 (2007) ....................................................6-8
**12**

       *Bostick v. St. Jude Medical, Inc.*, 2004 WL 3313614 (W.D. Tenn. 2004) ...................................11
**13**

       *Brown v. Allstate Ins. Co.*, 17 F.Supp.2d 1134 (S.D. Cal. 1998) ...............................................13
**14**

       *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
**15**     20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999) ..............................................................13

**16** *Chern v. Bank of America*, 15 Cal.3d 866, 127 Cal.Rptr. 110 (1976).........................................13

**17** *Dunn v. Midwest Buslines, Inc.*, 94 F.R.D. 170 (E.D. Ark. 1982) .............................................12

**18** *Eisen v. Carlisle & Jacquelin*,
          417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ...............................................11
**19**

       *E.W. French & Sons, Inc. v. General Portland, Inc.*,
**20**     885 F.2d 1392 (9th Cir. 1989) ...................................................................................13

**21** *Fairbanks v. Superior Court*,
          154 Cal.App.4th 435, 64 Cal.Rptr.3d 623 (2007) .......................................................8
**22**

       *Forman v. Data Transfer*, 164 F.R.D. 400 (E.D. Pa. 1995).......................................................12
**23**

       *Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006)...........................................................6
**24**

       *Hagen v. City of Winnemucca*, 108 F.R.D. 61 (D. Nev. 1985) ...................................................11
**25**

       *Hitz v. First Interstate Bank*,
**26**     38 Cal.App.4th 274, 44 Cal.Rptr.2d 890 (1995) ........................................................8

**27** *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398 (Tex. 2000) ..........................................................11

**28** *Jefferson v. Chase Home Fin. LLC*, 2007 WL 1302984 (N.D.Cal. 2007) ...................................8

- ii -

Motion to Dismiss and Strike Portions of Complaint
Case No.:  C 07 4046 WDB

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Kline v. Security Guards, Inc.*, 196 F.R.D. 261 (E.D. Pa. 2000)..............................................12, 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
     29 Cal.4th 1134, 131 Cal.Rptr.2d 29 (2003) ...................................................................13

*Luedke v. Delta Airlines*, 155 B.R. 327 (S.D. N.Y. 1993) ...........................................................12

*McKell v. Washington Mut., Inc.*,
     142 Cal.App.4th 1457, 49 Cal.Rptr.3d 227 (2006) ............................................................8

*Mitan v. Feeney*, 497 F.Supp.2d 1113 (C.D. Cal. 2007) ................................................................9

*Sanneman v. Chrysler Corp.*, 191 F.R.D. 441 (E.D. Pa. 2000)....................................................12

*Shirk v. Vista Unified School Dist.*,
     42 Cal.4th 201, 64 Cal.Rptr.3d 210 (2007) ......................................................................6

*Shuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004 (9th Cir. 2002)............................................5

*Van Slyke v. Capital One Bank*, 2007 WL 1655641 (N.D. Cal. 2007) ..........................................8

*Wansrath v. Time Warner Entertainment*,
     1997 WL 122815 (S.D. N.Y. 1997) .................................................................................12

*Statutes*

California Business and Professions Code
     Section 17200 ..........................................................................................................1, 3, 14
     Section 17500 ......................................................................................................1, 3, 13, 14

California Civil Code
     Section 1750 ...................................................................................................................1, 3
     Section 1761 .............................................................................................................6, 7, 9
     Section 1770 .......................................................................................................4, 6, 9, 10
     Section 1780 ..................................................................................................................9, 14

*Rules*

Federal Rules of Civil Procedure
     Rule 12.............................................................................................................................1
     Rule 23............................................................................................................................11

*Other Authorities*

HUD, Real Estate Settlement Procedures Act (RESPA) Statement of Policy
     1999-1 Regarding Lender Payments to Mortgage Brokers,
     64 Fed.Reg. 10080 (March 1, 1999)..................................................................................5

Manual for Complex Litigation (4th ed.)
     Section §21.222 ...............................................................................................................10