Carter M. Zinn (State Bar No. 205034)  Hon. Phyllis J. Hamilton
LAW OFFICES OF CARTER M. ZINN
3450 Broderick Street, Suite 302
San Francisco, California 94123
Telephone: (415) 292-4100
Facsimile: (415) 292-4106
E-mail: carter@zinn-law.com

John W. Phillips (Washington State Bar No. 12185)
Matthew Geyman (Washington State Bar No. 17544)
PHILLIPS LAW GROUP, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, WA 98104
Telephone: (206) 382-6163
Facsimile: (206) 382-6168
E-mail: jphillips@jphillipslaw.com

Ari Brown (Washington State Bar No. 29570)
LAW OFFICE OF ARI BROWN
1001 Fourth Avenue, Suite 3600
Seattle, WA 98154
Telephone: (206) 623-5890
Facsimile: (206) 623-0965
E-mail: ari@abrownlegal.com

ATTORNEYS FOR PLAINTIFF LAURA THOMPSON

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA THOMPSON, an individual, on behalf of herself and others similarly situated,<br><br>                Plaintiff,,<br><br>  v.<br><br>HOMECOMINGS FINANCIAL LLC., a foreign corporation,<br><br>                Defendant. | No. C07 4046<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

## I.     INTRODUCTION

Plaintiff brings this action, on behalf of herself and a class of persons similarly situated, against Defendant for damages and for injunctive relief resulting from Defendant's unlawful conduct concerning residential mortgage loan transactions with Plaintiff and the class members.

1.     Individuals who decide to buy a home or refinance a home loan often obtain the assistance of a mortgage broker to obtain financing. In order to compensate the broker for services rendered in arranging a mortgage loan, the borrower agrees to pay a fee to the broker. This fee is commonly referred to as an "origination fee" or "broker fee" but it also carries other labels. The fee is computed as a percentage of the loan amount.

2.     The broker proceeds to secure a loan commitment from a lender with specific terms, including interest rate, that the lender will extend a loan to the particular borrower. As part of that deal, the broker often secures from the lender a commitment from the lender to pay an additional fee directly to the broker that increases the interest rate on the borrower's loan. The borrower unwittingly accepts a loan at an interest rate higher than what the lender would have otherwise charged for the loan in the absence of the lender's payment to the broker. This payment from the lender to the broker is commonly referred to as a "yield spread premium," "YSP," "rebate," "negative points," "back-end payment," as well as other names (and will be referred to herein as a "premium" or "premium payment"). The broker and the lender often do not disclose adequately to the borrower the lender's premium payment to the broker until the borrower signs final closing documents, if at all, thus depriving the borrower of a meaningful opportunity to negotiate better loan terms.

3.     Defendant, Homecomings Financial LLC ("Homecomings") obtains a substantial percentage of its business from the referrals of mortgage brokers. Homecomings pays the brokers a premium in exchange for referring the loan at an inflated interest rate – and the more inflated the rate, the greater the premium Homecomings pays to the broker.

4. Homecomings' failure to disclose to California borrowers its premium payment until the borrowers sign final loan documents (hereinafter "closing") takes the borrower off the market and deprives the borrower of the right to negotiate for a lower interest rate loan. The damage to Plaintiff and to Homecomings' other California borrowers is direct and substantial; the borrower is forced to make inflated interest payments on a mortgage. As to all such loans, Homecomings' failure to disclose the payment to a broker early in the loan process constitutes a deceptive act and an unfair method of competition prohibited by California's Business and Professional Code ("BPC") § 17200 *et seq.* and California's Consumers Legal Remedies Act ("CLRA") § 1750 *et seq.* The omission in Good Faith Estimates of the fact and amount of the premium as to Homecomings' loans also is willfully misleading and in violation of § 17500 of the BPC. As for many of these loans Homecomings also violates the federal Real Estate Settlement Procedures Act ("RESPA") as incorporated by the California Financial Code § 50505, California Residential Mortgage Lending Act ("CRMLA").

## II.   JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the class are citizens of a State different from the Defendant. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claim occurred in this judicial district.

## III.   PARTIES

6. Plaintiff Laura Thompson is an individual who resides in San Francisco, California. Plaintiff obtained a mortgage loan from Homecomings that was arranged through a mortgage broker.

7. Defendant Homecomings Financial LLC ("Homecomings"), formerly known as Homecomings Financial Network Inc, is a Delaware corporation with its principal place of business in Minneapolis, Minnesota, and with branch offices throughout the State of California. Homecomings is a wholly-owned subsidiary of General Motors Corporation. Homecomings is

licensed in California under the Residential Mortgage Lending Act. At all times pertinent to this action, Homecomings conducted business throughout the State of California.

### IV. FACTS COMMON TO THE CLASS

8. Homecomings engages in residential mortgage lending within the State of California. Homecomings operates programs by which mortgage brokers[1] refer prospective borrowers to Homecomings.

9. The payments at issue in this case are Homecomings' premium payments to mortgage brokers. Homecomings regularly makes rate sheets available to brokers in print and through its internet website. The rate sheets and corresponding internet pricing programs list the terms of the loans Homecomings is offering on a particular date. Interest rates are set with reference to a particular rate sheet for use between the broker and Homecomings. When a broker submits a loan to Homecomings on behalf of a borrower, Homecomings quotes an interest rate in writing that presumes a specific premium payment to the broker. The premium directly correlates with a higher interest rate to the borrower, i.e., if Homecomings does not pay the premium, the rate sheet provides for a lower interest rate loan.

10. Over the life of a loan, individual borrowers may pay thousands of dollars more than they would have if Homecomings had not paid the premium.

11. The premium must be disclosed and adequately explained to the borrower early in the transaction for the borrower to be able to evaluate the true cost of the loan. For loans subject to RESPA's disclosure requirements, a lender must provide a written Good Faith Estimate that discloses any premium to the borrower, no later than the earlier of (1) the extension of credit, or (2) three days after the lender receives the borrower's loan application. 12 U.S.C. § 2604(c); 24 C.F.R. § 3500.7. The failure to disclose a premium on the Good Faith Estimate violates these rules which are specifically incorporated into California law by California Financial Code § 50505. In addition, RESPA requires the lender to disclose its premium payment to the broker in

---

[1] The term "mortgage broker" denotes any person who, for compensation or gain, or in the expectation of compensation or gain, arranges or otherwise facilitates a mortgage loan on behalf of a borrower.

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- 4 -

the HUD-1 Settlement Statement provided the borrower at closing.  24 C.F.R. § 3500.7.  Both disclosures are required to comply with the law.

12. As the United States Department of Housing and Urban Development ("HUD"), the agency charged with regulatory oversight of RESPA, has stated with regard to the reasoning behind the disclosure requirements:

> In HUD's view, meaningful disclosure includes many types of information:  what services a mortgage broker will perform, the amount of the broker's total compensation for performing those services (including any yield spread premium paid by the lender), and whether or not the broker has an agency or fiduciary relationship with the borrower.  … HUD believes that disclosure of this information, and written acknowledgement by the borrower that he or she has received the information, should be provided early in the transaction.  Such disclosure facilitates comparison shopping by the borrower, to choose the best combination of up front costs and mortgage terms from his or her individual standpoint.

Real Estate Settlement Procedures Act Statement of Policy 2001-1, 66 Fed. Reg. 53052, 53056.

13. Homecomings regularly does not disclose premiums in the time or manner that RESPA and state law require and does not require its brokers to do so either.  Instead, Homecomings often discloses the premium only at closing, if at all.  This directly impacts borrowers by saddling them with higher interest rates without any explanation to borrowers or opportunity for borrowers to evaluate how the premiums will affect their monthly payments.  Plaintiff received no advance written notice that Homecomings was going to pay her broker a premium as part of her transaction.  Instead, the premium was "disclosed" to Plaintiff for the first time when she signed final closing documents.  For some members of the Class, the premium was not even disclosed at closing.  Plaintiff, like the members of the Class, never received a timely opportunity to reject the premium, find another lender, or obtain the lower interest rate with Homecomings that was available to her.  As a result, her mortgage carries a higher interest rate than it should.

14. On information and belief, Homecomings may employ other strategies – such as use of warehouse lines of credit – to enable brokers to hide from the borrower Homecomings' premium payment to the broker.

15. Homecomings' failure to disclose premiums harmed Plaintiff and the members of the Class as they were deprived of material information they could have used to bargain for better loan terms and a lower interest rate from Homecomings if no such undisclosed payment had been made. The result is that the Plaintiff and the Class have paid, and will continue to pay, more interest than they would have if Homecomings had not paid the undisclosed premium.

### V.    PLAINTIFFS' TRANSACTION

16. In November 2006, Laura Thompson ("Plaintiff") sought to refinance the home mortgage on her residence located in San Francisco, California.

17. Plaintiff contacted a mortgage broker and completed a loan application. The broker obtained credit reports for Ms. Thompson.

18. The broker submitted the loan to Homecomings for a funding decision before December 1, 2006. The broker submitted information including Plaintiff's credit scores and other financial information. Homecomings quoted an interest rate for the loan based on information submitted that specified the amount of the premium that Homecomings would pay to the mortgage broker.

19. The written Good Faith Estimate the broker prepared is dated November 29, 2006, and signed on December 11, 2006. According to the Good Faith Estimate, Plaintiff's estimated payment to the broker was $2,717. The Good Faith Estimate did not disclose that Homecomings would pay a premium to the broker or the amount of any such payment. Indeed, at the bottom of the page was a section entitled "Compensation to Broker (Not Paid Out of Loan Proceeds):" Listed the following:

"Mortgage broker commission/Fee:"

"Any additional Compensation from Lender:"

The corresponding dollar amount was left blank next to each line. And next to the line stating "Any Additional Compensation from Lender," the box labeled "No" was marked. The Good Faith Estimated thus affirmatively stated that there would be no additional compensation, such as a premium, from the lender to the mortgage broker.

20. Ms. Thompson considered the terms stated on the Good Faith Estimate, including the amount of the broker's compensation, to be reasonable and continued working with this broker to close the transaction.

21. Ms. Thompson was not informed that Homecomings was also going to pay her broker a premium in connection with the loan, how much the premium would be, or the effect this payment would have on her interest rate.

22. An escrow agent came to Plaintiff's home on or about January 8, 2007, and Plaintiff signed final closing documents. Plaintiff was not provided a copy of the loan documents in advance of January 8, 2007.

23. Plaintiff was not given a copy of the loan documents she signed at closing and only received a copy of those documents weeks later.

24. Contrary to the representation on the Good Faith Estimate, Homecomings paid the broker a premium of $14,250 that was not disclosed to Plaintiff prior to closing.

25. The premium that Homecomings paid to the broker caused Plaintiff's interest rate to be higher than the rate that Homecomings would have extended to Plaintiff had it not paid the premium.

### VI.   THE CLASS ALLEGATIONS

26. Plaintiff named above brings this action on behalf of a Class of similarly situated individuals, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

27. The Class is comprised of every borrower for whom the following is true:

    a. The borrower entered (or enters) into a residential mortgage transaction or a refinance mortgage, secured by residential property located in California, that was (or is) funded by Homecomings;

    b. In connection with that transaction, Homecomings paid the mortgage broker a premium;

   c. In connection with that transaction, the borrower either paid a fee to the broker or the amount of the premium paid by Homecomings to the broker exceeds any reduction to the borrower from the fee to the broker stated on the Good Faith Estimate;

   d. In connection with that transaction, neither Homecomings nor a broker through whom it transacted listed the fact and amount of the premium in writing on the Good Faith Estimate that was provided to the borrower, prior to the time the borrower signs final closing documents, or failed to disclose the premium on the HUD-1 Settlement Statement provided to the borrower, or both; and

   e. With respect to the inadequate disclosures on Good Faith Estimates, Homecomings received the loan application more than three days before the borrower signed final closing documents such that Homecomings could have informed, or caused the broker to inform, the borrower of the amount of the premium in time to reasonably allow the borrowers to make informed decisions regarding the loan.

  28. Plaintiff seeks to recover damages under California Civil Code § 1780 and seek restitution and injunctive relief under California Business and Professions Code § 17200 and for herself and on a class-wide basis.

  29. The Class members are so numerous as to make joinder impracticable.

  30. There are numerous issues of fact and law common to members of the Class, including the following:

   a. Whether Homecomings' failure to adequately disclose to a borrower the existence and amount of its premium payment to the broker constitutes an unfair, deceptive, or otherwise unlawful or prohibited act.

   b. Whether Homecomings' advertisement and use of other strategies to help brokers avoid disclosing to the borrower Homecomings' premium payment to the broker constitutes an unfair, deceptive, or otherwise unlawful or prohibited act.

  c. Whether Homecomings' failure to adequately disclose to a borrower the existence and amount of its premium payment to the broker is a business act within the meaning of the California Business and Professions Code § 17200.

  d. Whether Homecomings' advertisement and use of other strategies to help brokers avoid disclosing to the borrower Homecomings' premium payment to the broker is a business act within the meaning of the California Business and Professions Code § 17200.

  e. Whether Homecomings' payment to brokers creates an unlawful inducement to the broker to violate its duties under California Financial Code § 50701.

  f. Whether Homecomings' failure to adequately disclose to a borrower the existence and amount of its premium payment to the broker threatens an incipient violation of consumer law or violates the policy or spirit of such law or otherwise threatens or harms competition.

  g. Whether Homecomings' advertisement and use of other strategies to help brokers avoid disclosing to the borrower Homecomings' premium payment to the broker threatens an incipient violation of consumer law or violates the policy or spirit of such law or otherwise threatens or harms competition.

  h. Whether Homecomings' unlawful acts caused class members to incur damages.

  i. Whether Homecomings' unfair, deceptive, or otherwise unlawful or prohibited business practices have allowed Homecomings to receive and to hold ill-gotten gains belonging to members of the public.

31. Plaintiff's claim is typical of the claims of the members of the Class. Plaintiff, like each member of the Class, did not receive notice prior to closing that Homecomings would pay a premium to her broker. This information was material as a payment from Homecomings to the broker was in exchange for an increase in the borrower's interest rate. Plaintiff and members of the Class have been damaged by that failure to disclose.

32. Plaintiff will fairly and adequately protect the interest of all Class members in the prosecution of this action and in the administration of all matters relating to claims stated herein. She is situated similarly with, and has suffered injuries similar to, the members of the Class. Plaintiff has also retained counsel experienced in handling class action suits involving consumer credit law and unfair business practices. Neither Plaintiff nor her counsel has any interest that might cause them to fail to vigorously pursue this action.

33. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

    a. The members of the Class are not aware that they have been wronged and even if they were the value of their individual claims would make it difficult if not impossible to prosecute individual actions.

    b. Concentration of the litigation concerning this matter in this Court is desirable.

    c. The claims of Plaintiff are typical of the claims of the Class.

    d. A failure of justice will result from the absence of a class action.

    e. There is nothing about the Class that would render maintenance of class action unusually difficult.

**VII. FIRST CAUSE OF ACTION: VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ: UNFAIR COMPETITION**

(By the Named Plaintiff Individually and on Behalf of the Class)

34. Plaintiff realleges all preceding paragraphs.

35. Beginning at least as long as four years prior to the filing of the complaint, Homecomings has committed acts of unfair competition as defined by California Business and Professions Code § 17200, by engaging in the acts and practices alleged above.

36. Homecomings' failure to ensure that Plaintiff, and each of the members of the Class, received written notice prior to closing that indicated that a premium would be paid in

connection with their mortgages, constituted unfair and deceptive practices as defined by California Business and Professions Code § 17200.

37. By virtue of the acts and omissions alleged above, Homecomings violated the duties set forth in California Financial Code §§ 50503 and 50505.

38. By virtue of the acts and omissions alleged above, Homecomings violated prohibitions set forth in California Financial Code § 50204.

39. Homecomings caused and otherwise enticed brokers to violate the fiduciary duties owed to borrowers under California Financial Code § 50701.

40. Homecomings' conduct threatens an incipient violation of consumer law or violates the policy and spirit of such law and otherwise significantly threatens or harms competition.

41. Homecomings' conduct affects the public interest and presents a continuing threat to the public in that it has unlawfully deceived thousands of consumers by causing them to enter into loans on unfavorable terms and, upon information and belief, continues to do so.

42. Plaintiff and members of the Class have no other adequate remedy of law.

43. Plaintiff and members of the Class incurred monetary losses as a direct and proximate result of Homecomings' conduct.

44. Homecomings' conduct was the proximate cause of the losses incurred by Plaintiff and members of the Class.

45. As a direct and proximate result of the acts alleged above, Homecomings received and continues to hold ill-gotten gains belonging to members of the public.

46. An action for injunctive relief and restitution under the Unfair Trade Practices Act is specifically authorized under California Business and Professions Code § 17203. Homecomings has engaged and proposes to continue engaging in unfair competition. An order enjoining such continued unfair practices is appropriate.

47. Accordingly, Homecomings is liable to Plaintiff and members of the Class for restitution in amounts to be proven at trial.

48. If Plaintiff succeeds in enforcing these rights affecting the public interest, then attorney's fees may be awarded against Homecomings pursuant to California Code of Civil Procedure § 1021.5 because a significant benefit has been conferred on the general public by enjoining Homecomings from engaging in unlawful, unfair, and deceptive acts. Further, the necessity and financial burden of enforcement are such as to make such an award appropriate.

## VIII.   SECOND CAUSE OF ACTION: VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

(By the Named Plaintiff Individually and on Behalf of the Class)

49. Plaintiff realleges all preceding paragraphs.

50. Plaintiff is a "Person" and "Consumer" as defined by California Civil Code § 1761 (c) and (d).

51. Homecomings is a "Person" as defined by California Civil Code § 1761(c).

52. All dealings between Plaintiff and Homecomings as set forth above constitute "transactions" as defined by California Civil Code § 1761(e).

53. Homecomings performed "services" for Plaintiff as defined by California Civil Code § 1761(b).

54. Homecomings violated the provisions of the Consumers Legal Remedies Act, that on information and belief included but were not limited to California Civil Code §§ 1770 (1) – (3), (5), (9), (10), (14), (16), (18), and (19).

55. Homecomings' conduct threatens an incipient violation of consumer law and/or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

56. Homecomings' unlawful, unfair, and deceptive business practices as described above, present a continuing threat to members of the public. Plaintiff and other members of the general public have no other adequate remedy of law.

57. As a direct and proximate result of the acts alleged above, Homecomings received and continue to hold ill-gotten gains belonging to members of the public.

58. An action for injunctive relief under the Consumers Legal Remedies Act is specifically authorized under California Civil Code §§ 1780 and 1782(d).

59. Pursuant to California Civil Code §1782, Plaintiff provided written notice of Plaintiff's claims regarding violations of the Consumers Legal Remedies Act to Homecomings by certified mail return receipt requested and demanded correction and rectification. Homecomings has failed to provide rectification and correction in response to that written notice following the expiration of a reasonable amount of time.

60. Plaintiff and the Class have been and continue to be damaged as a result of Homecomings' conduct.

61. Homecomings' acts were undertaken deliberately and with intent to deceive and/or defraud thereby entitling Plaintiff to punitive damages against Homecomings in a sum in accordance with evidence presented at trial.

62. Accordingly, Homecomings is liable to Plaintiff and members of the Class for damages, including costs and attorney's fees in amounts to be proven at trial.

### IX. THIRD CAUSE OF ACTION: VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17500, ET SEQ.

(By the Named Plaintiff Individually and on Behalf of the Class)

63. Plaintiff realleges all preceding paragraphs.

64. Beginning at an exact date unknown to Plaintiff but at least as long as four years prior to the filing of the complaint, Homecomings has committed acts of untrue and misleading advertising as defined by California Business & Professions Code § 17500, by failing to disclose the true compensation to be paid to borrowers' mortgage brokers and the effect of that compensation on borrowers' interest rates.

65. The fraudulent, unlawful and unfair business practices and false and misleading advertising of defendant as described above present a continuing threat to consumers in that defendant will continue to mislead mortgage borrowers to enter into loans without being given accurate information in the time and manner necessary. .

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be awarded against Homecomings and in favor of Plaintiff and the Class for the following:

1. Actual damages;
2. Injunctive relief as allowed by law;
3. Restitution as allowed by law;
4. Statutory, exemplary and punitive damages to the extent allowed by law;
5. Costs, attorneys' fees and prejudgment interest; and
6. Any other relief the Court deems appropriate.

DATED this _1_ day of November, 2007.

By:

LAW OFFICES OF CARTER M. ZINN

//s

Carter M. Zinn

PHILLIPS LAW GROUP, PLLC

By: //s
John W. Phillips
Matthew Geyman

LAW OFFICE OF ARI BROWN

By: //s
Ari Y. Brown

Attorneys for Plaintiff

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- 14 -