MARK JOSEPH KENNEY (State Bar No. 87345)
mjk@severson.com
JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
SUNNY S. HUO (State Bar No. 181071)
ssh@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
Homecomings Financial, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA THOMPSON, etc., | Case No.: C 07 4046 PJH |
| Plaintiff, | **MOTION TO DISMISS AND STRIKE PORTIONS OF FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM** |
| vs. | |
| HOMECOMINGS FINANCIAL, LLC, | Hearing Date: January 9, 2008 |
| Defendants. | Time: 9:00 a.m. |
| | Courtroom: 3 |
| | Judge: Hon. Phyllis J. Hamilton |
| | Complaint Date: August 7, 2007 |
| | Trial Date: Not Set |

**NOTICE OF MOTION TO DISMISS AND STRIKE**

Please take notice that on January 9, 2008, at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 3 of the above-entitled court at 450 Golden Gate, San Francisco, California before the Honorable Phyllis J. Hamilton, defendant Homecomings Financial, LLC will, and it hereby does, move:

1. Pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the second cause of action of plaintiffs' first amended complaint on the grounds that

    a. The California Consumers Legal Remedies Act (Civ. Code, §1750 et seq.) does not apply to transactions, such as those alleged in the complaint, involving only the extension of credit; and

    b. Plaintiff has not alleged facts showing a violation of the Consumers Legal Remedies Act's specific prohibitions.

2. Pursuant to Fed. R. Civ. P. 12(f) to strike paragraphs 1 and 4 of the first amended complaint's prayer. Those paragraphs seek compensatory, statutory, and punitive damages, relief that is not available under California Business and Professions Code § 17200 et seq. or §17500 et seq., and which plaintiff cannot recover under the Consumers Legal Remedies Act for the reasons mentioned in the accompanying motion to dismiss.

Defendant brings this motion pursuant to Fed. R. Civ. P. 12(b)(6) and (f) on the grounds stated above. The motion is based on this notice, the accompanying memorandum of points and authorities, the first amended complaint, and all other records and papers on file in this action.

DATED: November 16, 2007         SEVERSON & WERSON
                                 A Professional Corporation


                                 By: _____/S/_____
                                         Sunny S. Huo

                                 Attorneys for Defendant
                                 Homecomings Financial, LLC

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

In this putative class action, plaintiff Laura Thompson claims that in making home mortgage loans defendant Homecomings Financial, LLC ("Homecomings") does not properly disclose to prospective borrowers that Homecomings will pay yield-spread premiums ("YSPs") to the borrowers' brokers.

Homecomings moves to dismiss Thompson's second cause of action under California's Consumers Legal Remedies Act (Civ. Code, §1750 et seq.; "CLRA") for two reasons. First, the act does not apply to the extension of credit, such as the making of a home mortgage loan. Thompson does not allege that Homecomings sold any good or service, but only made home mortgage loans. Second, Thompson fails to allege conduct that violates the CLRA's specific prohibitions, even if the transaction were otherwise covered by the act. For both reasons, Thompson states no claim under the act, and her second cause of action should be dismissed.

Homecomings also moves to strike from the complaint's prayer two paragraphs (¶¶1, 4) that seek compensatory, statutory, and punitive damages. Damages are not recoverable under California Business and Professions Code §17200 et seq. (the "Unfair Competition Law" or "UCL") or §17500 et seq. (the "False Advertising Law" or "FAL"), the statutes on which Thompson bases her first and third causes of action. Thompson cannot recover damages under the CLRA because she fails to state a claim under that statute.

For each of these reasons, the Court should dismiss Thompson's second cause of action and strike paragraphs 1 and 4 of the first amended complaint's prayer.

## II.

## STATEMENT OF ISSUES TO BE DECIDED

1. Should the Court dismiss Thompson's second cause of action because the CLRA does not apply to credit transactions, such as the alleged home mortgage loans?

2. Should the Court dismiss Thompson's second cause of action because the complaint does not allege facts showing that Homecomings engaged in any practice forbidden by Civil Code §1770?

3. Should the Court strike paragraphs 1 and 4 of the first amended complaint's prayer because the relief those paragraphs seek—actual, statutory, and punitive damages—is not recoverable on plaintiff's claims under the UCL and FAL and because plaintiff does not allege a viable claim under the CLRA?

## III.

## THE COMPLAINT'S PERTINENT ALLEGATIONS

According to the first amended complaint ("FAC"),[1] Homecomings "engages in residential mortgage lending" in California, offering loan programs under which independent mortgage brokers refer prospective borrowers to Homecomings for loans. (FAC, ¶8.)

The brokers are compensated, in part by a YSP that Homecomings pays. (*Id.*, ¶¶2, 3, 9.)

> A yield spread premium, or "YSP," is a lump sum paid by a lender to a broker at closing when the loan originated by the broker bears an above-par interest rate. As HUD has explained it:
>
> Payments to brokers by lenders, characterized as yield spread premiums, are based on the interest rate and points of the loan entered into as compared to the par rate offered by the lender to the mortgage broker for that particular loan (e.g., a loan of 8% and no points where the par rate is 7.50% will command a greater premium for the broker than a loan with a par rate of 7.75% and no points). In determining the price of a loan, mortgage brokers rely on rate quotes issued by lenders, sometimes several times a day. When a lender agrees to purchase a loan from a broker, the broker receives the then applicable pricing for the loan based on the difference between the rate reflected in the rate quote and the rate of the loan entered into by the borrower....
>
> Lender payments to mortgage brokers may reduce the up-front costs to consumers. This allows consumers to obtain loans without paying direct fees themselves. Where a broker is not compensated by the consumer through a direct fee, or is partially compensated through a direct fee, the interest rate of the loan is increased to compensate the broker or the fee is added to principal. In any of the compensation meth-

---

[1] As a motion to dismiss or strike is based on the complaint's allegations, Homecomings states those allegations without comment now as to their truth or falsity and without waiving its right to contest their truth later.

> ods described, all costs are ultimately paid by the consumer, whether through direct fees or through the interest rate.

*Shuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1007-08 (9th Cir. 2002), quoting HUD, Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed.Reg. 10080, 10085 (March 1, 1999).

As indicated in the HUD's 1999 Statement of Policy, the YSP "correlates with a higher interest rate than the borrower would otherwise pay on the loan. (FAC, ¶9.)

Thompson claims that under the Real Estate Settlement Practices Act and its implementing regulations, Homecomings is required to disclose any YSP in a Good Faith Estimate that it must give the prospective borrower within three days of receiving his or her loan application. (*Id.*, ¶11.)

According to Thompson, Homecomings "regularly" or "routinely" violates this supposed legal requirement by disclosing the YSP, if at all, only at the closing of the loan. (*Id.*, ¶¶4, 13, 19, 21-24.) Belated or non-disclosure, Thompson says, deprives borrowers of the ability to negotiate for a lower interest rate loan. (*Id.*, ¶4.)

Based on these spare factual allegations, Thompson attempts to allege three causes of action: the first under the UCL, the second under the CLRA, and the third under the FAL.

## IV.

## THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED

The Court should dismiss Thompson's second cause of action under the CLRA for two reasons: First, the CLRA does not apply to transactions, such as the making of home mortgage loans, that involve only the extension of credit, not the sale of goods or services. Second, Thompson has not alleged facts showing a violation of the CLRA's specific prohibitions.

### A.   The CLRA Does Not Apply To Credit Transactions

"[N]either the express text of CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods or services are covered under the act." *Berry v. American Express Pub., Inc.,* 147 Cal.App.4th 224, 233, 54 Cal.Rptr.3d 91 (2007).

- 3 -

The CLRA's scope is discerned first from its statutory text. *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006) ("The starting point for [the] interpretation of a statute is always its language."); *Shirk v. Vista Unified School Dist.,* 42 Cal.4th 201, 211, 64 Cal.Rptr.3d 210 (2007) ("We begin with the statutory language because it is generally the most reliable indication of legislative intent.")

The CLRA's central provision, Civ. Code, §1770, bans various specified practices only if "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Section 1770 and the rest of the CLRA's provisions do not apply to a transaction that does not involve the sale or lease of "goods" or "services," as the CLRA specially defines those terms.

The CLRA defines "goods" to mean "tangible chattels." Civ. Code, §1761(a). "The extension of credit [such as a loan] is not a tangible chattel." *Berry,* 147 Cal.App.4th at 229.

Nor is a loan or other extension of credit a sale or lease of "services," a term that the CLRA defines to mean "work, labor, and services for other than a commercial or business use." Civ. Code, §1761(b). Credit is not a "service" within the CLRA's definition. A loan involves no work or labor or any other "service," but only the use of the lender's money.

The CLRA's legislative history confirms the fact that it does not apply to extensions of credit.

> Early drafts of section 1761, subdivision (d), defined "Consumer" as "an individual who seeks or acquires, by purchase or lease, any goods, services, *money*, or *credit* for personal, family or household purposes." (Assem. Bill No. 292 (1970 Reg. Sess.) Jan. 21, 1970, italics added.) But the Legislature removed the references to "money" and "credit," before CLRA's enactment, and they do not appear in the current version.

*Berry*, 147 Cal.App.4th at 230.

By deleting "money" and "credit" from the CLRA's definitional sections, the Legislature evidenced its intent to exclude loans from the act's coverage. "[T]he Legislature's deletion of the terms 'money' and 'credit' from CLRA's definition of 'consumer' strongly counsels us not to stretch the provision to include extensions of credit unrelated to the purchase of any specific good

- 4 -

or service." *Id.* at 231. "[C]ourts must not interpret a statute to include terms the Legislature deleted from earlier drafts." *Id.*

Other changes made during the Legislature's consideration of the CLRA's early drafts confirm that deletion of the terms "money" and "credit" was intended to narrow the act's scope.

> For example, an early draft of section 1780 gave standing to "[a]ny consumer who *obtains credit*, or purchases or leases, or agrees to purchase or lease, goods or services primarily for personal, family, or household purposes, and who thereby suffers any damage...." (Italics added.) The draft's placement of the phrase "obtains credit" demonstrates the Legislature viewed the extension of credit as a separate activity from purchasing or leasing goods and services, rather than an example of it. The final version of section 1780 deleted the specific references to activities covered under the act, and it now confers standing on: "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770...."

*Id.*, at 232.

As *Berry* points out, §1770 also evidences the Legislature's intent that the CLRA not extend to credit transactions. "Most of the matters in section 1770 appear directed toward the purchase and lease of tangible goods and services, and none suggests the statutory language covered extensions of credit unrelated to a specific sale or lease transaction." *Id.* Moreover, the section's above-quoted introductory phrase, limiting the section's prohibitions to practices undertaken in connection with the sale or lease of goods or services, is considerably narrower in scope than the section's initial draft, which would have banned the specified practices if "undertaken by any person in the conduct of any trade or commerce ...." *Id.*

Other recent state and federal decisions adopt *Berry's* careful analysis of the CLRA's text and legislative history as well as its conclusion that the act does not apply to credit transactions. *Van Slyke v. Capital One Bank*, 2007 WL 1655641 at *3-4 (N.D. Cal. 2007) (CLRA does not apply to credit cards); *Augustine v. FIA Card Services, N.A.,* 485 F.Supp.2d 1172, 1174-1175 (E.D. Cal. 2007); *Fairbanks v. Superior Court*, 154 Cal.App.4th 435, 441-44, 64 Cal.Rptr.3d 623 (2007) (CLRA does not apply to insurance); *see also McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457, 1488, 49 Cal.Rptr.3d 227 (2006) (CLRA does not apply to home loans).

1    The one decision that has bucked this trend, *Jefferson v. Chase Home Fin. LLC*, 2007 WL 1302984 (N.D.Cal. 2007), is inapposite here for the same reason Judge Alsup found it "not on point" in *Van Slyke,* 2007 WL 1655641 at *4: *Jefferson* "held that the CLRA did apply to financial services connected with mortgages, specifically to a program under which debtors were able to prepay their mortgages without penalty. The claim under the CLRA was not directed to the extension of credit itself. It was directed at the defendant's prepaid mortgage practices, a financial service provided to debtors …."[2]

Here, Thompson complains only about the loan she got, allegedly at a higher interest rate because she supposedly was not informed, in a timely manner, about the YSP paid her broker. She mentions no "service"; just the extension of credit. Without facts to show that the disputed transaction was intended to or did result in the sale or lease of goods or services, Thompson's second cause of action fails to allege a viable claim under the CLRA.[3]

**B.    Thompson Has Not Alleged Violation Of The CLRA's Prohibitions**

Unlike California's UCL, the CLRA does not prohibit all "unfair" acts—even in transactions to which the CLRA applies. Instead, the CLRA's key provision, Civ. Code, §1770, declares 19 specifically defined practices to be unlawful, and §1780 gives a private right of action to consumers injured by those specific practices. Thompson fails to state a viable claim under these

---

[2]    *Hitz v. First Interstate Bank,* 38 Cal.App.4th 274, 286-88, 44 Cal.Rptr.2d 890 (1995) is distinguishable for the same reason. *Hitz* held the CLRA applied to a bank's practice of charging late and overlimit fees on credit cards because the cards had a convenience feature (allowing the holder to buy without carrying or using cash), a service apart from the cards' use as a means for the extension of credit. A home mortgage loan, like those involved in this case, offers no such "convenience feature."

[3]    Thompson's conclusory allegations that her dealings with Homecomings were "transactions" as defined in Civil Code §1761(e) and that Homecomings performed "services" for her, as defined by Civil Code §1761(b) are insufficient to avoid dismissal. (See FAC, ¶¶52, 53.) As the Supreme Court has recently re-emphasized, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…. Factual allegations must be enough to raise a right to relief above the speculative level …." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007). Allegations of legal conclusions such as those recited in paragraphs 52 and 523 of the first amended complaint no longer suffice, if they ever did, to meet the pleader's burden; instead, facts must be averred to show that those elements of Thompson's claim are, in fact, met. *Mitan v. Feeney*, 497 F.Supp.2d 1113, 1126 (C.D. Cal. 2007).

1  provisions because she alleges no facts showing that Homecomings committed any of the
2  practices forbidden by section 1770.

3  Paragraph 54 of the first amended complaint avers, in conclusory fashion, that Homecomings violated the CLRA "includ[ing] but not limited to" Civil Code §1770(a)(1)-(3), (5), (9), (10), (14), (16), (18), and (19). No facts are stated to show how Homecomings acted in a manner so as to violate any of these provisions. The allegation is mere "labels and conclusions." It does not meet Fed. R. Civ. P. 8's requirement of a statement of the grounds on which plaintiff is entitled to relief. Instead, the complaint must allege *facts* that "raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965.

Moreover, non-disclosure of a probable YSP payment—the gist of what Thompson claims Homecomings did wrong—is not conduct that violates the subparts of §1770(a) cited in the first amended complaint's paragraph 54—or any other, unmentioned CLRA provision.[4]

Section 1770(a)(1)-(3) and (5) ban passing off goods or services as those of another, misrepresenting the source, sponsorship or approval of goods or services, or affiliation, connection or association of the seller. Thompson does not allege that Homecomings engaged in any such conduct. She avers a non-disclosure of the YSP, not an affirmative misrepresentation of source or affiliation.

Similarly, §1770(a)(9) and (10) ban advertising goods or services either without the intent to sell them as advertised or to supply reasonably expectable demand. Thompson does not allege that Homecomings advertised loans or that it failed to supply any advertised loans to those who applied and qualified for them.

---

[4] Civ. Code §1770 is the CLRA's only substantive provision. The paragraphs of that statute that are not cited in the first amended complaint's paragraph 54 proscribe: (a) false designations of geographic origin; (b) representing that goods are original or new if they are used or reconditioned; (c) representing that goods or services are of a particular standard, quality or grade, if they are of another; (d) disparaging another seller's goods, services or business; (e) advertising furniture without revealing it is unassembled; (f) advertising the price of unassembled furniture without also indicating its assembled price; (g) saying a part, replacement or repair is needed when it is not; and (h) saying the customer will get a rebate or discount if it is contingent on an event that will occur after the transaction is consummated. Civ. Code, §1770(a)(4), (6)-(8), (11), (12), (15), (17). Not disclosing a YSP does not violate any of these portions of the statute.

1    Section 1770(a)(14) and (16) ban affirmative misrepresentations about the rights, remedies or obligations a transaction confers or involves or saying the subject of the transaction has been supplied when it has not been. Thompson does not claim Homecomings misstated Thompson's rights, obligations or remedies under her loan. Instead, she claims that Homecomings did *not* tell her that it was paying her broker a YSP. Likewise, Thompson does not contend Homecomings failed to supply the "subject" of her transaction—a home mortgage loan—or told her that the loan had been supplied before it actually was.

Section 1770(a)(18) bans misrepresenting a salesperson's authority to negotiate final terms of the transaction. Thompson alleges no such misstatement by Homecomings.

Section 1770(a)(19) bans inserting unconscionable provisions in contracts. Thompson does not claim any provision of her loan was unconscionable.

In short, Thompson does not allege facts which show the violation of any of the cited subparts of Civil Code §1770. Hence, Thompson fails to state a claim under that section or the rest of the CLRA.

## V.

## THE PRAYER FOR DAMAGES SHOULD BE STRICKEN

Paragraphs 1 and 4 of the first amended complaint's prayer seek "[a]ctual," "[s]tatutory, exemplary and punitive damages." These paragraphs should be stricken as Thompson is not entitled to damages of any kind in this suit.

Damages are not recoverable under the UCL or FAL, and thus are not relief that may be awarded on Thompson's first or third causes of action. "A UCL action is equitable in nature; damages cannot be recovered. … [U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.' "[5] "Plaintiffs may not receive damages, much less treble

---

[5]    *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144, 131 Cal.Rptr.2d 29 (2003), *citing Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 179-80, 83 Cal.Rptr.2d 548 (1999); *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538 (1992); *accord: E.W. French & Sons, Inc. v. General Portland, Inc.*, 885 F.2d 1392, 1401-02 (9th Cir. 1989).

- 8 -

damages, or attorney fees."[6] The same is true under the FAL: private plaintiffs may not recover damages or civil penalties under Business and Professions Code section 17500.[7]

Though actual and punitive damages are recoverable under the CLRA (Civ. Code, §1780(a)(1), (4)), Thompson has pled no viable claim under the CLRA—as shown above.

Therefore, paragraphs 1 and 4 and 5 should be stricken from the first amended complaint's prayer.

## VI.

## CONCLUSION

For the reasons stated above, the Court should dismiss the second cause of action and strike paragraphs 1 and 4 of the first amended complaint's prayer.

DATED: November 16, 2007

SEVERSON & WERSON
A Professional Corporation

By: /S/
Sunny S. Huo

Attorneys for Defendant
Homecomings Financial, LLC

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

---

[6] *Cel-Tech Communications, Inc.,* 20 Cal.4th at 179; *accord: America Online, Inc. v. Superior Court,* 90 Cal.App.4th 1, 15 n. 10, 108 Cal.Rptr.2d 699 (2001).

[7] *Brown v. Allstate Ins. Co.,* 17 F.Supp.2d 1134, 1140 (S.D. Cal. 1998); *Chern v. Bank of America*, 15 Cal.3d 866, 875, 127 Cal.Rptr. 110 (1976).