Hon. Phyllis J. Hamilton

Carter M. Zinn (State Bar No. 205034)
LAW OFFICES CARTER M. ZINN
3450 Broderick Street, Suite 302
San Francisco, California 94123
Telephone: (415) 292-4100
Facsimile: (415) 292-4106
E-mail: Carter@zinn-law.com

John Phillips (Washington State Bar No. 12185)
Phillips Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, WA 98104-2682
Phone: (206) 382-6163
Facsimile: (206) 382-6168
e-mail: jphillips@jphillipslaw.com

Ari Brown (Washington State Bar No. 29570)
Law Office of Ari Brown
1001 Fourth Avenue, Suite 3600
Seattle, WA 98154
Telephone: (206) 623-5890
Facsimile: (206) 623-0965
E-mail: ari@abrownlegal.com

Attorneys for Plaintiff Laura Thompson

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA THOMPSON, an individual, on behalf of herself and others similarly situated,<br><br>Plaintiff,,<br><br>v.<br><br>HOMECOMINGS FINANCIAL LLC., a foreign corporation,<br><br>Defendant. | CLASS ACTION<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Hearing Date: December 6, 2007<br>Judge: Phyllis J. Hamilton<br>Complaint Date: August 7, 2007<br>Trial Date: Not Set |

JOINT CASE MANAGEMENT STATEMENT

1

Pursuant to Fed. R. Civ. P. 16(c) and 26(f) and Civil Local Rule 16-9 the parties submit the following Joint Case Management Statement.

1. Jurisdiction and Service

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the class are citizens of a State different from the Defendant. The defendant has been properly served with the original summons and complaint and the amended complaint. No issues exist regarding personal jurisdiction or venue.

2. Statement of Facts

A. **Plaintiff's Position**

Plaintiff Laura Thompson refinanced her home mortgage by obtaining a mortgage from defendant Homecomings Financial ("Homecomings") that was arranged through an independent mortgage broker. On or about November 29, 2006, the mortgage broker prepared a Good Faith Estimate that estimated that Plaintiffs' total payment to the broker would be $2,717, which would include the broker's full compensation for the loan. The Good Faith Estimate did not disclose that the lender, Homecomings, was to pay the broker an additional $14,250 as a premium in exchange for the loan carrying a higher interest rate than that which Homecomings would have extended to Plaintiff given her finances and credit score in the absence of such premium payment. This information was not disclosed to Plaintiff until the date of her loan closing on January 8, 2007.

Plaintiff alleges that Homecomings regularly extended loans to California residents without informing its borrowers, in writing, on the Good Faith Estimate of the fact that Homecomings will pay the broker a premium in exchange for a higher interest rate to the borrower, of the amount of that premium, and of its consequent effect. Plaintiff alleges that the payment of an undisclosed premium and its consequent effects is illegal in that it does not comply with the disclosure requirements under the Real Estate Settlement Procedures Act and is otherwise unfair and deceptive.

B.  **Defendant's Position**

Plaintiff's entire case is premised on Homecomings' alleged failure to disclose a payment it makes to certain brokers on wholesale loan transactions commonly referred to as the "yield spread premium."

In a wholesale loan transaction, the borrower initially submits his/her application to a loan broker—not the lender. The loan broker takes the application and then shops it amongst various possible lenders. The loan broker is not an employee or an agent of any of the lenders.

In a wholesale loan transaction, RESPA requires the loan broker to provide a Good Faith Estimate disclosure within three days of receiving the loan application. The date the broker receives the application, however, is not the date the ultimate lender receives the application—that can take place days or weeks later, when the borrower and broker finally select a lender.

RESPA requires the lender to either ensure that the broker provided a Good Faith Estimate, or provide a Good Faith Estimate itself. If a yield spread premium is anticipated at the time the Good Faith Estimate is sent, then it should be disclosed. However, the broker and the lender do not always know that a yield spread premium is going to be paid this early in the loan transaction.

Homecomings' practice is and was to disclose the yield spread premium (where one is contemplated) on its early Good Faith Estimates. In fact, it did so on the Good Faith Estimate it provided to plaintiff (attached hereto as Exhibit A), which was sent the day it received plaintiff's loan application from the broker.

So long as either the broker or the lender provides a Good Faith Estimate disclosing the estimated fees, the lender is in compliance with RESPA. (24 C.F.R. § 3500.7(b).)

3.  <u>Legal Issues</u>

The first legal issue is the adequacy of written disclosure of premium payments by Defendant to mortgage brokers required by the Real Estate Settlement Practices Act, 12 U.S.C. § 2604(c); 24 C.F.R. 3500; *Anderson v. Wells Fargo Home Mortg. Inc.*, 259 F. Supp.2d 1143,

1147 (W.D. Wash. 2003); *Brazier III v. Security Pacific Mortgage* 245 F.Supp.2d 1136, 1141-1142 (W.D. Wash. 2003).

The second legal issue is whether the RESPA disclosure requirements, are incorporated into California law by the California Residential Mortgage Lending Act ("CRMLA") Cal. Fin. Code 50500 *et seq.* and provide a basis for finding violations of the California Business and Professions Code § 17200 (the "UCL"), Cal. Bus. & Prof. Code §17500 (the "FAL"), and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750.

The third legal issue is whether compliance with RESPA and its implementing regulations affords Homecomings a "safe harbor" against plaintiff's state law claims.

Other legal issues may arise as litigation and discovery proceeds.

4. <u>Motions</u>

The Court previously granted a motion for leave to amend and plaintiff filed an amended complaint on November 15, 2007. Homecomings filed a motion to dismiss which is set for hearing on January 9, 2008, that is subject to an agreed briefing schedule. Plaintiff intends to file a motion for class certification following some preliminary discovery. The parties anticipate that each will file one or more dispositive motions regarding RESPA and its application to California law.

5. <u>Amendment of Pleadings</u>

Plaintiff amended her complaint on November 15, 2007 and does not anticipate the need for further amendment.

6. <u>Evidence Preservation</u>

Plaintiff has preserved her loan documents for use in this litigation.

Homecomings has preserved the documents related to plaintiff's loan. Homecomings has also issued a company-wide litigation hold to preserve hardcopy and electronic records related to plaintiff and the putative class members' claims.

7. <u>Disclosures</u>

The parties will exchange initial disclosures within ten days of filing this joint report. By

agreement, initial documents to be exchanged include the documents in each party's possession regarding the mortgage loan at issue in this case including the documents provided to Plaintiff prior to and at closing, her correspondence with the mortgage broker, and Homecomings' complete loan file regarding the loan to Ms. Thompson including copies of electronic documents.

8. Discovery

A. **Plaintiff's Position**

The parties have not exchanged any discovery to date. Discovery is anticipated to include the following topics:

(a) The actual services defendant performed on Plaintiff's behalf;

(b) Payments that were made or received between parties and/or third parties arising from Plaintiff's home mortgage loan;

(c) Information the parties disclosed to one another and the manner information was provided;

(d) Representations the parties made to one another and the manner such representations were made;

(e) The extent to which defendant engaged in similar practices with other borrowers or home buyers;

(f) Homecomings' lending policies and practices including disclosure requirements, underwriting and approval guidelines, payments to brokers and third parties;

(g) Homecomings' marketing efforts to brokers and to the public;

(h) Information needed to determine the size and content of the class;

(i) Efforts to comply with state or federal regulations and any governmental or regulatory audits;

(j) Information regarding Homecomings' use of warehouse lending agreements.

JOINT CASE MANAGEMENT STATEMENT

5

(k) Expert discovery regarding damages.

B. **Defendant's Position**

Given the limited nature of plaintiff's claims, Homecomings believes that discovery can and should be completed efficiently. Since this is a putative class action, Homecoming believes that discovery should take place in two stages: pre-certification and post-certification.

Homecomings intends to pursue discovery on at least the following topics pre-certification:

(1) Yield spread premium disclosures by brokers to plaintiff and putative class members

(2) Communications between brokers and putative class members regarding compensation

(3) Adequacy of class representative and class counsel, as well as other class action requirements

Homecomings believes that discovery related to the amount of potential damages/recovery should be deferred until (and if) class certification is granted since such issues are irrelevant to the adjudication of the certification motion, and would be a waste of the parties' resources to pursue if certification is denied.

To the extent that plaintiff intends to pursue discovery into Homecoming's sensitive business materials, Homecomings will request that the Court enter the standard Northern District Protective Order available on its website.[1]

9. Class Action

Plaintiff seeks to certify a class of California borrowers whose interest rates were inflated by a premium payment Homecomings made to each borrower's mortgage broker that was inadequately disclosed in writing to the borrower. The proposed class is defined in paragraph 27 of the Amended complaint. Membership in the class, and damages for each putative class

---

[1] http://www.cand.uscourts.gov/cand/form.nsf/7813fd3053452aef88256d4a0058fb31/5e428ee77bf8e03b88256dd3005d9450/$FILE/StipulatedProtectiveOrder-1-03.pdf

member will be ascertainable from documents each borrower's loan file and from Homecomings' corresponding rate sheets that were in effect during the class period. This putative class action does not challenge the legitimacy of premiums paid by lenders to brokers. It challenges that adequacy of disclosure of such premiums as reflected by policies and practice of Homecomings.

Plaintiff will confer with defendant to attempt to agree to limited discovery necessary for plaintiffs to bring a class certification motion. If they are unable to agree, the parties will bring the matter before the court. If the needed discovery is forthcoming, Plaintiff believes that she could bring a class certification motion as early as March, 2008.

10. Related Cases

The case of *Kubiak v. NovaStar Mortgage Inc. et al* C07-03438 is currently pending before Judge Walker. The case is based on the same conduct of another mortgage lender and alleges the same causes of action.

11. Relief

A.   **Plaintiff's Position**

Plaintiffs will seek damages for plaintiff and the proposed class that represents the additional money paid each month to service the higher interest rate expense they have incurred due to the premiums paid by Defendant to mortgage brokers. This amount can be calculated for each borrower based on documents in the loan files Homecomings maintains. The payment to Ms. Thompson's broker has caused her to pay approximately $429 more each month. Plaintiff will seek exemplary and punitive damages under the CLRA along with costs and attorney's fees. By way of injunctive relief under the UCL and FAL, Plaintiff will request that the Court require Homecomings to reform loans that are still in existence to remove the inflating effect of any premium paid and that it be enjoined from extending additional loans without fully disclosing the fact and amount of any premium paid to a mortgage broker.

B.   **Defendant's Position**

Plaintiff's case is solely based on the disclosure of yield spread premiums. Plaintiff

cannot challenge the validity of the yield spread premium payment itself—that is, whether it was a legitimate payment for goods and services provided by the broker—via a class action. The authority on point is unanimous. Accordingly, damages cannot be measured by either the amount of the yield spread premium or the amount of "extra interest" that the borrower paid "as a result of" the yield spread premium. At best, damages would have to be measured by comparison of the loan that the borrower obtained from Homecomings against the alternatives available otherwise available to the borrower at the same point in time. That is, if the borrower had received a yield spread premium disclosure, would/could the borrower have obtained a better deal elsewhere?

12. <u>Settlement and ADR</u>

The parties agree that this case will be suitable for mediation and will be ready for mediation once sufficient discovery has been conducted to ascertain the size and scope of the putative class and the Court determines if class certification is appropriate.

13. <u>Consent to Magistrate Judge for All Purposes</u>

Plaintiff has declined to have this case adjudicated by a magistrate judge.

14. <u>Other References</u>

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>

The parties do not propose narrowing issues by agreement at this time.

Homecoming requests that discovery be conducted in two stages as noted above. The parties will discuss that proposal to see if a mutual accommodation can be reached. Furthermore, because the UCL claim cannot be tried to a jury, Homecoming will request that issues regarding that claim be tried separately.

16. <u>Expedited Schedule</u>

The parties do not propose adjudicating this case on an expedited basis.

17. <u>Scheduling</u>

JOINT CASE MANAGEMENT STATEMENT

    a.    Motion for Class Certification:    May 5, 2008

    b.    Opposition to Class Cert.:    May 30, 2008

    c.    Reply to Opposition:    June 18, 2008

    d.    Hearing on Class Certification:    July 2, 2008

    e.    Expert witness designation:    August 18, 2008

    f.    Discovery Cutoff:    November 17, 2008

    g.    Dispositive Motions noted for consideration by: December 19, 2008

    h.    Pretrial conference:    March 16, 2009

18. <u>Trial</u>

**A.** The parties agree that the case can be ready for trial in March 2009. As noted above, Homecomings believes trial will have to take place in two parts. The parties agree that the trial should take approximately 5-10 court days.

19. <u>Disclosure of Non-Party Interested Entities or Persons</u>

Each party has filed the required certification. Plaintiff knows of no additional entities with a financial or other interest in the outcome of the proceeding.

Homecomings filed its certificate of interested parties, as required by both the FRCP and the Local Rules, on October 18, 2007.

Dated this 29th Day of November, 2007.

Presented By:

                                    LAW OFFICES OF CARTER M. ZINN

                                    _/s/ Carter Zinn_

                                    Carter M. Zinn

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

PHILLIPS LAW GROUP, PLLC

By: _____//s_____
John W. Phillips


LAW OFFICE OF Ari BROWN

By: _____//s_____
Ari Y. Brown

Attorneys for Plaintiffs

Approved as to Form;
Approved for Entry


SEVERSON & WERSON

By: _____//s_____
Sunny S. Huo
Attorneys for Defendant

DEC. 20. 2006  1:19PM    714 3272759                                    NO. 1094   P. 42

## GOOD FAITH ESTIMATE OF SETTLEMENT CHARGES

Borrower:                                    Creditor:

LAURA THOMPSON                               HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS
170 GUERRERO ST. UNIT # F                    FINANCIAL NETWORK, INC.)
SAN FRANCISCO, CA 94103                      4350 VON KARMAN AVENUE, SUITE 100
                                             NEWPORT BEACH, CA  92660

Loan Number: 047-216103-3                    Date: 12/20/2006

---

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.
The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

---

LOAN AMOUNT:                                                              $    570000.00

ITEMIZATION OF PREPAID FINANCE CHARGES:
  809  Broker Fee from HF to Broker to Mortgage Broker
         2.5% (P.O.C.) $14250.00 pd by Lender
  810  LENDER LOAN CHARGE TO HF                                    835.00
  811  BROKER PROCESSING FEE                                       745.00
  901  Prepaid Interest for (02/01/2007 - 03/01/2007)              3662.06
  1101 Settlement or Closing Fee to CLOSING AGENT FEE               565.00

       TOTAL PREPAID FINANCE CHARGE                                        $      5807.06

       AMOUNT FINANCED                                                     $    564192.94

OTHER SETTLEMENT CHARGES:

  AMOUNTS PAID TO OTHERS ON YOUR BEHALF BY CREDITOR -
  803  Appraisal Fee to AKINA, DAVID                                350.00
  1106 Notary Fee to NOTARY FEE                                     125.00
  1108 Title Insurance to TITLE                                    1500.00
  1201 Recording Fee                                                 60.00

       TOTAL OTHER SETTLEMENT CHARGES                                      $      2035.00

       LOAN PROCEEDS                                                       $    562157.94

---

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974 as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.

We will require (a) particular provider(s) from a list that we control or approve. The specific provider(s) and the actual cost(s) will be disclosed to you at settlement.

---

I (We) hereby acknowledge that I (we) have received a completed copy of the HUD Special Information Booklet "Settlement Cost", unless the loan being applied for is for refinancing the property.
If for any reason the loan I (we) have applied for does not close, and if permitted by applicable law, I(we) agree to reimburse the lender for any and all costs incurred to process my (our) application including but not limited to appraisal, survey and title insurance.

---

LAURA THOMPSON              Date



EXHIBIT A