Honorable Phyllis J. Hamilton

Carter M. Zinn (State Bar No. 205034)
Law Offices of Carter M. Zinn
3450 Broderick Street, Suite 302
San Francisco, California 94123
Telephone: (415) 292-4100
Facsimile: (415) 292-4106
E-mail: carter@zinn-law.com

John W. Phillips (Washington State Bar No. 12185)
Matthew Geyman (Washington State Bar. No 17544)
Phillips Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, WA 98104
Phone: (206) 382-6163
Facsimile: (206) 382-6168
E-mail: jphillips@jphillipslaw.com
E-mail: mgeyman@jphillipslaw.com

Ari Brown (Washington State Bar No. 29570)
Law Office of Ari Brown
1001 Fourth Avenue, Suite 3600
Seattle, WA 98154
Telephone: (206) 623-5890
Facsimile: (206) 623-0965
E-mail: ari@abrownlegal.com

Attorneys for Plaintiff Laura Thompson

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA THOMPSON, an individual, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOMECOMINGS FINANCIAL LLC, a foreign corporation,<br><br>Defendant. | No. C07-04046-PJH<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**<br><br>Hearing Date: January 9, 2008<br>Judge: Phyllis J. Hamilton<br>Complaint Date: August 7, 2007<br>Trial Date: May 11, 2009 |

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS (C07-04046-PJH)

1

## I. INTRODUCTION

Plaintiff's Complaint alleges that Homecomings Financial LLC ("Homecomings") failed to adequately provide to borrowers a written disclosure of premium payments made to brokers in exchange for loans that carry a higher interest rate to the borrower. Plaintiff does not allege that these premium payments are inherently unlawful and are always used for wrongful purposes. (These premium payments are known by many names including yield spread premiums ("YSP"), payments outside of closing ("POC") or rebates (referred to herein as "premiums")). Plaintiff claims only that these payments need to be adequately disclosed in writing to borrowers early in the loan process – when borrowers can use the information meaningfully. Homecomings' premium payment to Plaintiff's mortgage broker served to increase the interest rate on her loan. Plaintiff alleges that paying this premium without receiving a written disclosure of the fact and amount of it on the Good Faith Estimate ("GFE") delivered to her violated the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and its regulations, 24 C.F.R. 3500 *et seq.*, as incorporated into California law by the California Residential Mortgage Lending Act ("CRMLA"), Cal. Fin. Code § 50505. Based on this unlawful conduct, Plaintiff asserts claims under the California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. and Prof. Code § 17500 *et seq.*, and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*

Homecomings limits its motion to a challenge to Plaintiff's CLRA claim. First, Homecomings argues that the CLRA does not apply to Plaintiff's mortgage transaction, which Homecomings claims involves only "an extension of credit," which is neither a "good" nor a "service." Second, Homecomings argues that Plaintiff has not sufficiently alleged facts that give Homecomings notice of the CLRA's specific prohibitions that she claims Homecomings violated. The Court should reject both of Homecomings' arguments and deny the motion. Excluding all claims that involve any kind of loan from the reach of the CLRA is not a logical reading of the statute. Furthermore, Homecomings' premium payment was necessarily for "services" rendered by the mortgage broker to Ms. Thompson. If it were not, it would be

patently illegal as a "kickback" under RESPA. Such "services" are not only within the scope of the CLRA, but are also not excluded simply because they are associated with a loan. Finally, Plaintiff has alleged specific facts and identified a number of precise CLRA prohibitions that Homecomings violated through its inadequate written disclosure of its premium payment to Plaintiff's broker.

## II.   ARGUMENT

### A.   The Court Should Assume the Truth of Plaintiff's Factual Allegations.

When the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), "[r]eview is limited to the complaint." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir.1993). The Court must "limit its review to the allegations of material facts set forth in the complaint, [read] in the light most favorable to the non-moving party and which, together with all reasonable inferences therefrom, [the Court must] take to be true." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). "Factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). While Plaintiff cannot rest on legal conclusions alone, "rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007); quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827 (1989). "A well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Twombly*, 127 S.Ct. at 1965; quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

Plaintiff alleges that Homecomings made a loan to her at an inflated interest rate caused by Homecomings' inadequately disclosed premium payment to her broker. While such premiums are valid if negotiated by the borrower as a means of reducing her closing costs, they are not valid when the broker and lender first decide upon the premium and then inadequately disclose it to the borrower, all to serve the purpose of increasing both the interest rate and the broker's compensation. The higher the premium given to the broker, the higher the interest rate paid by the borrower. Complaint, ¶¶ 2-3.

Homecomings issues rate sheets to mortgage brokers. These rate sheets and corresponding Internet pricing programs list the terms of the loans Homecomings offers on a particular date. When a broker submits a loan to Homecomings on behalf of a borrower, Homecomings releases a written quote of an interest rate that presumes a specific premium payment to the broker. The premium directly correlates with a higher interest rate to the borrower. That is to say, if Homecomings does not pay the premium, the rate sheet provides for a lower interest rate loan for the borrower. *Id.* ¶ 9. While such premiums are valid when negotiated by the borrower as a trade-off for higher closing fees, the premium must be disclosed in writing early in the transaction so that the borrower can evaluate whether to accept a higher interest loan in exchange for the premium payment to her broker. *Id.* ¶ 11. For that reason, RESPA requires early disclosure of the premium to the borrower. Plaintiff alleges that Homecomings did not comply with these early written disclosure requirements with respect to her loan. *Id.* ¶¶ 13-14.

Plaintiff attempted to refinance her home mortgage through a mortgage broker in late November, 2006. *Id.* ¶¶ 16-17. The broker submitted Plaintiff's credit scores and other financial information to Homecomings for a funding decision before December 1, 2006. Homecomings, in turn, quoted an interest rate for the loan based on information submitted by the broker that specified the amount of the premium that Homecomings would pay the broker. *Id.* ¶ 18. The GFE the broker provided to Plaintiff is dated November 29, 2006, and was signed on December 11, 2006. According to the GFE, Plaintiff's estimated payment to the broker for his services was $2,717. The GFE specifically stated that the broker would not received additional compensation from the lender. *Id.* ¶19. Plaintiff did not receive early written notification that Homecomings was going to pay her broker of a premium in connection with the loan, how much that premium would be, or that the premium would inflate her interest rate. *Id.* ¶21. Contrary to the representation on the GFE delivered to her, Homecomings paid her broker a premium of $14,250 that was not disclosed to Plaintiff until closing. As Homecomings apparently concedes, its premium payment caused Plaintiff's interest rate, and consequent monthly payment, to be higher

than the rate Homecomings would have extended to Plaintiff had it not paid the premium. *Id.* ¶¶ 24-25; Defendant's Motion to Dismiss, Dkt. 30 at 4-5.

### B.   Homecomings Violated its Obligation Under RESPA to Adequately Disclose to Plaintiff in Writing its Premium Payment to Her Mortgage Broker.

The Department of Housing and Urban Development ("HUD") and the courts have emphasized the need for lenders and brokers to disclose all compensation to the broker, including the fact and amount of a lender's premium payment to the broker at two distinct times: first, written disclosure is needed in a GFE early in the loan process, and second, the premium must be disclosed at closing in a HUD-1 closing statement. *See Anderson v. Wells Fargo Home Mortgage, Inc.*, 259 F. Supp. 2d 1143, 1146 (W.D. Wash. 2003); *Pierce v. NovaStar Mortgage Inc.*, 489 F. Supp. 2d 1206, 1214 (W.D. Wash. 2007). As defendant notes, when disclosed and negotiated, a premium can serve as a method to compensate the mortgage broker for the services the broker provides. However, HUD has noted that such premiums are ripe for abuse:

> [I]n some cases less scrupulous brokers and lenders take advantage of the complexity of the settlement transaction and use yield spread premiums as a way to enhance the profitability of the mortgage transactions without offering the borrower lower up front fees. In these cases, yield spread premiums serve to increase the borrower's interest rate and the broker's overall compensation, without lowering up front cash requirements for the borrower.

RESPA Statement of Policy 2001-1, 66 Fed. Reg. at 53,054.

RESPA and its implementing regulations specify the time and the manner that all compensation to the broker, including any premium, must be disclosed to the borrower. The statute requires a lender to provide a GFE of the costs to be incurred in connection with the mortgage, including disclosure of any premium, before <u>the earlier of</u> (1) the extension of credit or (2) three business days after application for a mortgage loan. 12 U.S.C. § 2604(c). As one court emphasized, RESPA requires the disclosure "to be made within three days of the application, on the Good Faith Estimate, not at closing when it may be literally or at least practically too late for the borrower to use the information." *Anderson*, 259 F. Supp. 2d at 1147. The regulations specifically state that disclosing the full compensation to the mortgage broker, must include any premium. 24 C.F.R. § 3500.7 (c)(1); *see also* 24 C.F.R. § 3500,

Appendix A ("Such charges also include indirect payments or back-funded payments to mortgage brokers that arise from the settlement transaction.").

RESPA recognizes that loans are often consummated through a mortgage broker and that the broker is the party who has direct personal contact with the borrower. Nevertheless, a lender cannot shift the blame to the broker for its failure to provide a proper GFE to the broker. When a loan is originated by a mortgage broker, RESPA places a duty on the lender to ascertain that an adequate GFE has been delivered to the borrower:

> (b) <u>Mortgage broker to provide</u>: In the event an application is received by a mortgage broker who is not an exclusive agent of the lender, the mortgage broker must provide a good faith estimate within three days of receiving a loan application based on his or her knowledge of the range of costs . . . As long as the mortgage broker has provided the good faith estimate, the funding lender is not required to provide an additional good faith estimate, ***but the funding lender is responsible for ascertaining that the good faith estimate has been delivered.***

24 CFR § 3500.7(b) (emphasis added).

The need for early written disclosure of the existence and amount of a premium is obvious. The premium constitutes a payment to the broker that ultimately is borne by the borrower in the form of higher interest rates. If the premium is disclosed, the borrower obtains a full understanding of the broker's compensation and its effect on the borrower's interest rate. Without such information the borrower lacks information to shop in the marketplace for a better deal.

In this case, Plaintiff applied for a loan on or before November 29, 2006 through a broker who submitted the loan to Homecomings on or before December 1, 2006. Homecomings was required to provide Plaintiff a GFE that disclosed all compensation to the broker, including any premium, no later than December 6, 2007.[1] The mortgage broker provided a GFE dated November 29, 2006 that Plaintiff received, as evidenced by her signature, and that she does not challenge as being untimely. The inadequacy of this GFE gives rise to this action. The GFE delivered to Plaintiff stated that the sum total of the broker's compensation would be $2,717 – to

---

[1] December 2 and 3, 2006, fell on a weekend. Therefore, the third business day following an application on Friday, December 1 was Wednesday, December 6.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS (C07-04046-PJH)

be paid by her – and it specifically stated that the broker would not receive any additional compensation from the lender. Complaint, ¶19. The GFE entirely omitted the fact that the broker would actually collect an additional $14,250 premium from Homecomings (for total compensation of $17,667) that would cause Plaintiff's interest rate to be higher than what she would have otherwise been eligible. Plaintiff only discovered her broker's true compensation when she was signing final closing documents – *i.e.,* when the information was no longer useful, and as a practical matter her hands were tied. Hiding this premium until the last minute violated RESPA's disclosure requirements and deprived Plaintiff of her right to choose as a consumer.

C. **The CLRA Applies to Homecomings' Violation of RESPA's Disclosure Requirements.**

The CLRA (Cal. Civ.Code, § 1750 *et seq.*), "established a nonexclusive statutory remedy for 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer...'" *Wang v. Massey Chevrolet*, 97 Cal.App.4th 856, 869, 118 Cal.Rptr.2d 770 (2002). The self-declared purposes of the act are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.*, quoting Cal Civ.Code, § 1760. The CLRA "shall be liberally construed." Cal. Civ.Code, § 1760. A plaintiff may bring a claim under the CLRA when "any person" employs a statutorily prohibited trade practice "in a transaction . . . which results in the sale or lease of goods or services to any consumer." *Id.* § 1770.

Homecomings argues that the CLRA does not apply to "extensions of credit." Homecomings further says that the cases that have applied the CLRA to mortgage transactions did so when, supposedly unlike here, the complaint attacked a specific "service" associated with the mortgage transaction. Dkt. 30 at 7-8. The Court should reject Homecomings' attempt to exclude an entire category of consumer transactions from the reach of the CLRA. In any event, Plaintiff's Complaint squarely addresses a premium payment for mortgage brokerage "services," and those "services" are plainly within the reach of the CLRA.

### 1. This Court Should Reject Homecomings' Claim that the CLRA Does Not Apply to Unfair and Deceptive Conduct in Extending Credit to Consumers.

Relying chiefly on *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224 (Cal. App. 2007) and *McKell v. Washington Mutual Inc.*, 142 Cal App. 4th 1457 (Cal. App. 2006), Homecomings argues that the CLRA excludes from its reach any "extension of credit." Dkt. 30 at 5-7. Another court in this district recently held that those intermediate appellate decisions are superficial, citing a number of decisions in this district and elsewhere that have reached a different conclusion. Specifically, the Court in *Hernandez v. Hilltop Financial Mortgage Inc.*, 2007 WL 3101250 (N.D. Cal. Oct. 22, 2007), observed:

> The Court finds neither *Berry* nor *McKell* persuasive, and concludes the California Supreme Court would find that the CLRA does apply to the mortgage loans in the present case. In so holding, the Court agrees with the reasoning of several other district courts that have addressed this issue. *See Jefferson v. Chase Home Finance LLC*, No. C06-6510, 2007 WL 1302984, at *3 (N.D.Cal. May 3, 2007) (concluding that the loan transactions between a mortgage finance company and the plaintiff involved "more than the provision of a loan; they also include [the] financial services [of managing the loan]."); *Knox v. Ameriquest Mortgage Co.*, No. C05-00240, 2005 WL 1910927, at *4 (N.D. Cal. Aug. 10, 2005) (finding that, in the context of predatory lending allegations and after a review of the case law, 'California courts generally find financial transactions to be subject to the CLRA.'); *In re Ameriquest Mortgage Co.*, No. 05-CV-7097, 2007 WL 1202544, at *6 (N.D. Ill. Apr. 23, 2007) (stating, in dicta, that 'it is not inconceivable that . . . plaintiffs could prove the existence of tangential 'services' associated with their mortgages and establish that these transactions were covered by the CLRA')."

*Hernandez*, 2007 WL 3101250 at *6 (some citations omitted).

This Court should reach the same conclusion. Firstly, while the California Supreme Court has not addressed the issue, it has assumed that the CLRA applies to a number of cases involving extensions of credit. *See Hernandez*, 2007 WL 3101250 at *8, citing cases. Secondly, while the CLRA does exclude certain transactions from its reach (*see* Cal. Civ. Code §§ 1754, 1755), it does not exclude extensions of credit. Thirdly, excluding an entire body of transactions without any explicit legislative edict to do so would be inconsistent with the CLRA's prescription that the CLRA "shall be liberally construed and applied to promote its underlying

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS (C07-04046-PJH)

purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. And fourth, to rely on the deletion of the words "money" or "credit" from the definition of "consumer" in an early draft of the CLRA – as did the Court in *Berry* – to conclude that an entire industry is exempt from the reach of the CLRA, would render other sections of the CLRA nonsensical. For example, the CLRA lists the conduct that is deemed unfair or deceptive under the CLRA and specifically describes "consumers" who are treated unfairly in the context of obtaining a loan or extension of credit:

> [H]ome solicitation . . . of a consumer who is a senior citizen where a loan is made encumbering the primary residence of that consumer for the purpose of paying for home improvements . . .

Cal. Civ. Code § 1770(a)(23).

> It is an unfair or deceptive act or practice for a mortgage broker or lender, directly or indirectly, to use a home improvement contractor to negotiate the terms of any loan that is secured, whether in whole or in part, by the residence of the borrower and which is used to finance a home improvement contract or portion thereof.

Cal. Civ. Code § 1770(b)(1). Thus, under Homecomings' pinched reading of the CLRA, "consumers" do not include those to whom credit is extended, but the specific conduct proscribed by the CLRA addresses extension of credit to "consumers." Homecomings' reading does not make sense. It is an established principle of statutory interpretation to read a statute so that each of its sections make sense and can be harmonized with its other sections. *See, e.g., Tucker Land Co. v. State of California*, 94 Cal.App.4th 1191, 1197 (Cal. App. 2001). Homecomings' reading of the CLRA makes the statute nonsensical, and this Court should reject it.

### 2. Homecomings' Premium Constitutes Payment for "Services."

Homecomings tries to distinguish *Jefferson* and the other authorities cited above by claiming that while those cases involved "services" related to a mortgage transaction, this case involves simply an extension of credit. As Homecomings says of Plaintiff: "She mentions no

"service"; just the extension of credit." Dkt. 30 at 8. Homecomings' argument is a gross mischaracterization of the Complaint. The Complaint's entire focus is on an undisclosed premium payment for mortgage brokerage *services*. Indeed, if Homecomings' premium payment to Ms. Thompson's broker were not for a *service*, then Homecomings' premium payment would constitute an unlawful referral fee under RESPA. *See* 12 U.S.C. § 2607(a).[2] Thus, unless Homecomings admits that its premium to Plaintiff's broker was not for "services" – and thus that it is liable under a different provision of RESPA[3] – this Complaint squarely addresses a premium payment for "services" that neither broker nor lender adequately disclosed to Ms. Thompson. Indeed, the court in *Hitz v. First Interstate Bank*, 38 Cal.App.4th 274, 44 Cal.Rptr.2d 890 (Cal.App.1995), anticipated such a situation and explained that even though the CLRA may not specifically cover "credit," a given credit product or transaction may provide some service susceptible to CLRA coverage. *Id.* at 286-87. This is precisely the character of the hidden payment here. Homecomings' payment to the mortgage broker was necessarily in exchange for the broker's services. Plaintiff only alleges that it should have been disclosed to her at a time when she could have made choices based on that information.

Homecomings relies on a number of cases that are distinguishable on this important ground. *Van Slyke v. Capital One Bank*, 503 F.Supp. 2d 1353 (N.D. Cal. 2007), for example, involved fees for credit cards that were not alleged to be for "services." *Berry* involved an allegation that an arbitration clause in a credit card agreement was unconscionable and violated

---

[2] In prior litigation involving lender premium payments, lenders avoided class certification by claiming that the reasonableness of the premium depended on the specific "services" the broker performed. *See, e.g., Lacasse v. Washington Mutual Inc.*, 198 F. Supp. 2d 1255 (W.D. Wash. 2002) (citing 64 Fed. Reg. 10080) ("The determinative test under RESPA is the relationship of the services, goods or facilities furnished to the total compensation received by the broker.") *see also Hirsch v. BankAmerica Corp.*, 328 F.3d 1306 (11th Cir. 2003); *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004 (9th Cir. 2002).

[3] If Homecomings holds to the position that its premium was not in exchange for services, Plaintiff will request leave to amend her Complaint to add a claim under the anti-kickback provision of RESPA, with relation back to the filing of the Complaint.

the CLRA. The only "good" alleged to be provided was the credit itself, and the plaintiff did not allege that any services had been performed. *Berry*, 147 Cal. App. 4th at 228-9.[4]

### 3. Plaintiff Has Adequately Alleged Specific Violations of the CLRA's Prohibitions

In her Complaint, Plaintiff set forth detailed facts showing non disclosure of information material to her loan and the brokerage services provided, and alleged that Homecomings violated a number of the CLRA's specific provisions, including California Civil Code §§ 1770(a)(1)–(3), (5), (9), (10), (14), (16), (18) and (19). Adequately pleading any one of these is sufficient to survive a motion to dismiss. Subsection 1770(a)(5), for example, prohibits "[r]epresenting that goods or services . . . have . . . characteristics . . . which they do not have . . ." And subsection 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." These prohibitions plainly address Homecomings' unlawful conduct in this case.

Homecomings used the GFE that the broker provided to the Plaintiff to discharge its duty of providing a GFE within three days of application. Ultimately, the terms of the loan at closing were materially inconsistent with the GFE, specifically in that the mortgage broker garnered far more compensation from the transaction than had been represented to Plaintiff. The GFE thus represented that the mortgage brokerage services were of one character (costing $2,717) when the services actually cost much higher (a total of $17,667) and were thus of another character. When Plaintiff received her settlement statement at closing, the closing statement was supplied in accordance with the terms stated in the GFE. Yet the settlement statement was very different than the GFE, and thus the loan was not provided in accordance with the terms stated in the GFE. Accordingly, Homecomings violated subsection 1770(a)(16) as well.

California courts have held that the practices proscribed by the CLRA include a

---

[4] In the recent case of *In re Late Fee Litig.* 2007 WL 410653 (N.D. Cal. 2007), the Court found the CLRA claim preempted but also relied on *Berry* to state in dicta that the CLRA does not apply to extensions of credit. The case involved no analysis of the CLRA itself or whether plaintiff's claims involved "services" associated with extensions of credit.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS (C07-04046-PJH)

proscription against a concealment of the true characteristics of the goods or services contrary to that represented. *See Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 37, 124 Cal.Rptr. 852 (1975). In finding that suppressing the true facts regarding a piece of machinery violated subdivision 1770(a)(5), the court in *Outboard Marine* observed, it is "fundamental that every affirmative misrepresentation of fact works a concealment of the true fact." *Id.* at 36. The court went on to note that "fraud or deceit may consist of the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact. *Id.*, citing *Moe v. Transamerica Title Ins. Co.*, 21 Cal.App.3d 289, 306, 98 Cal.Rptr. 547 (1971); *see also Daugherty v. American Honda Motor Co., Inc.* 144 Cal.App.4th 824, 835, 51 Cal.Rptr.3d 118 (2006) (noting that an omission of fact that the defendant was obliged to disclose is actionable under the CLRA). In *Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal.3d 582, 676 P.2d 1060 (1984), for example, the California Supreme Court reversed dismissal of a CLRA claim based on undisclosed management fees charged on an IRA account. Again, without specifying the subdivision of the CLRA that the defendant violated, the court held that a CLRA claim could go forward based on the potential that a bank's brochure would mislead consumers by failing to clearly state that the consumers could be charged a management fee. *Id.* 35 Cal.3d at 596-97.

Plaintiff's claim in this case falls squarely within the CLRA's broad proscriptions regarding misrepresentations and concealment, and she has adequately pled the facts giving rise to the claims under the CLRA under the notice pleading standards of Fed. R. Civ. P. 8(a). The Court should accordingly reject Homecomings' claim that Plaintiff has not adequately pled that Homecomings has violated the CLRA's specific prohibitions.[5]

---

[5] Homecomings also argues that Plaintiff's prayer for damages must be dismissed based on Homecomings' erroneous claim that the CLRA claim must be dismissed. Dkt. 30 at 10. Because the CLRA claim should be sustained and permits the recovery of damages, the Court should reject this derivative argument as well.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS (C07-04046-PJH)

### III. CONCLUSION

For all of the foregoing reasons, this Court should deny Homecomings' motion to dismiss.

DATED: December 12, 2007

                              LAW OFFICES OF CARTER M. ZINN

                              Carter M. Zinn

                              PHILLIPS LAW GROUP, PLLC

                              By: /s/_____
                                  John W. Phillips
                                  Matthew Geyman

                              LAW OFFICE OF ARI BROWN

                              By: /s/_____
                                  Ari Y. Brown

                              Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system and caused it to be electronically served on Defendant through the CM/ECF system through its registered email address.

/s/ _____
By: /s/ John W. Phillips