MARK JOSEPH KENNEY (State Bar No. 87345)
mjk@severson.com
JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
SUNNY S. HUO (State Bar No. 181071)
ssh@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
Homecomings Financial, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA THOMPSON, etc.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>HOMECOMINGS FINANCIAL, LLC, etc.,<br><br>　　　　Defendant. | Case No.: C 07 4046 PJH<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE PORTIONS OF FIRST AMENDED COMPLAINT**<br><br>Hearing Date:　January 9, 2008<br>Time:　9:00 a.m.<br>Courtroom:　3<br>Judge:　Hon. Phyllis J. Hamilton<br><br>Complaint Date:　August 7, 2007<br>Trial Date:　May 11, 2009 |

# I.

# INTRODUCTION

Homecomings Financial, LLC ("Homecomings") moved to dismiss plaintiffs' second cause of action under California's Consumers Legal Remedies Act ("CLRA"; Cal. Civ. Code, §1750 et seq.) for two reasons: First, the CLRA does not apply to credit transactions like the home loan plaintiff Laura Thompson says she obtained from Homecomings. Second, even if the CLRA applied, the complaint fails to allege facts showing that Homecomings engaged in any of the specific practices the CLRA forbids.

Thompson's response overcomes neither of these fatal defects to her CLRA claim.

First, in arguing that the CLRA applies to loans, Thompson relies primarily on *Hernandez v. Hilltop Fin. Mortg., Inc.*, 2007 WL 3101250 at *5-6 (N.D. Cal. 2007), a decision that improperly ignores the Ninth Circuit's recently reiterated admonition that a "federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it."[1] (Opp., 8-9.)

There is no "convincing evidence" that the California Supreme Court will not follow the two recent California Court of Appeal decisions[2] which, as *Hernandez* acknowledges, hold that the CLRA does not apply to mortgage loans or credit transactions. A federal judge must follow such intermediate state court precedent on issues of state law, even if he or she disagrees with it. *Ryman,* 505 F.3d at 994.

Second, Thompson argues that even if the CLRA does not apply to "pure" loans, the act applies here because she attacks a yield spread premium ("YSP") paid for her mortgage broker's "services" in arranging the mortgage loan. (Opp., 9-11; Compl., ¶1.) As her complaint makes clear, Thompson's broker's services were not separate from the loan itself, but instead were a necessary step in obtaining the loan. Such ancillary services which serve no purpose apart from

---

[1] *Ryman v. Sears, Roebuck & Co.,* 505 F.3d 993, 994 (9th Cir. 2007) (internal quotation marks & citation omitted).

[2] *Berry v. American Express Pub., Inc.* 147 Cal.App.4th 224, 229-32, 54 Cal.Rptr.3d 91 (2007); *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1488, 49 Cal.Rptr.3d 227 (2006).

facilitating a mortgage loan do not bring an otherwise non-covered loan transaction with the CLRA's reach. See *Maginn v. Northwest Mortgage Inc.*, 919 S.W.2d 164, 167 (Tex. Ct. App. 1996) (applying Texas' Deceptive Trade Practices Act). Furthermore, if the broker's services were truly a separate transaction, it was one in which Homecomings did not participate, and so its actions are still outside the CLRA's scope.

Third, Thompson says she alleged a violation of Civil Code section 1770(a)(5) and (16) by averring that the terms of her loan differed from those disclosed in the GFE her mortgage broker gave her. The GFE said the broker would receive no YSP; whereas, one was actually paid. (Opp., 11.) Again, Thompson is wrong. Homecomings did not make the allegedly false representation. The broker gave Thompson the GFE, not Homecomings. The YSP was not a "characteristic" of the loan or of the broker's services in arranging the loan, but rather part of the price paid for those services. Nor can the broker's mis-disclosure of the YSP be transformed into a representation that the subject of the transaction—whether loan or broker services—was not provided as agreed.

Accordingly, for both reasons stated in Homecomings' opening memorandum, the Court should dismiss Thompson's second cause of action under the CLRA—and strike the prayer for actual and punitive damages, which Thompson appears to concede is dependent on the viability of her CLRA claim. (See Opp., 15 n. 5.)

## II.

### THIS COURT SHOULD FOLLOW CALIFORNIA AUTHORITY IN HOLDING THAT THE CLRA DOES NOT APPLY TO LOANS

Conceding, as she must, that *Berry*, 147 Cal.App.4th at 229-32 and *McKell*, 142 Cal. App.4th at 1488 both squarely hold that the CLRA does not apply to extensions of credit, such as home mortgage loans, Thompson nevertheless urges this Court to disregard those two, recent California intermediate appellate court decisions and instead follow Judge Illston's recent contrary decision in *Hernandez,* 2007 WL 3101250 at *5-6. (Opp., 8.)

This is a siren song luring the Court to the shoals of judicial error.  Just three months ago, the Ninth Circuit again reminded district courts in this Circuit that *Erie* allows them no such freedom.

> Today we reiterate the rule that when (1) a federal court is required to apply state law, and (2) there is no relevant precedent from the state's highest court, but (3) there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it.
>
> \*       \*       \*
>
> " '[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.' "  The district court did not cite any evidence that the Oregon Supreme Court would disaffirm *Yeager*.  It merely disagreed with *Yeager*.  Because there is no evidence that the Oregon Supreme Court would have decided the OFLA issue differently, the district court erred in not applying the *Yeager* rule.

*Ryman,* 505 F.3d at 994, 995 (citations and fns. omitted).

There is no "convincing evidence" that the California Supreme Court would "decide differently" from and disapprove *Berry* and *McKell*.  *Hernandez* says "the California Supreme Court and intermediate appellate divisions have found the CLRA applicable" in "similar matters involving financial transactions."  *Hernandez,* 2007 WL 3101250 at *5.  But, in fact, no decision has so "found."  Instead, the single California Supreme Court case[3] and single Court of Appeal decision[4] *Hernandez* cites for this proposition decided other issues, not whether plaintiffs had

---

[3]  *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal.3d 582, 596-97, 200 Cal.Rptr.38 (1984).  In *Kagan*, the issue before the California Supreme Court was, as that court phrased it:  "May a consumer who notifies a prospective defendant of class grievances under the Consumer Legal Remedies Act and informally obtains individual relief, subsequently bring a class action for damages on behalf of herself and as a representative of the class against the prospective defendant?"  *Id*. at 586-87.  The high court also held there was a triable issue of fact as to whether Gibraltar falsely advertised when it said it would impose no management fee but imposed a trustee fee instead.  *Id*. at 596-97.  Neither of these issues raised, even tangentially, any issue regarding the CLRA's application to loan transactions, and the Supreme Court said nothing on that topic.

[4]  *Corbett v. Hayward Dodge, Inc.*, 119 Cal.App.4th 915, 14 Cal.Rptr.3d 741 (2004).  In *Corbett*, the sole issue was whether the trial court had abused its discretion in denying the prevailing defendant attorney fees under Civil Code section 1780(d), part of the CLRA.  Since it had won on the merits and was seeking fees under the CLRA, the defendant certainly did not argue that the CLRA was wholly inapplicable.  The losing plaintiff was hardly in a position to urge that

stated proper CLRA claims. *Hernandez* itself acknowledges as much.[5] "A decision, of course, does not stand for a proposition not considered by the court." *Flatley v. Mauro*, 39 Cal.4th 299, 320, 46 Cal.Rptr.3d 606 (2006). Nor is such a non-decision "convincing evidence" of how the court will rule when it does consider the issue.

*Hernandez* cites and "agrees with the reasoning of several other [federal] district courts that have addressed this issue." *Hernandez*, 2007 WL 3101250 at *6. Likewise, Thompson urges this Court to follow *Hernandez*. (Opp., 8:3-17.) This is error, as the Ninth Circuit explained in *Ryman*:

> We note that the district court did cite opinions by other federal district judges expressing their disagreement with the *Yeager* rule. ***The opinions of other federal judges*** on a question of state law ***do not constitute "convincing evidence that the state supreme court would decide [an issue] differently"*** ….

*Ryman*, 505 F.3d at 995 n. 1 (emphasis added; citation omitted).

*Hernandez* cites no other "evidence," convincing or otherwise, that the California Supreme Court will not follow *Berry* and *McKell*. Thompson, however, offers several additional arguments why, in her opinion, those two opinions were wrongly decided. None of the arguments are correct. Even less are Thompson's arguments "convincing evidence" that the California Supreme Court would follow her reasoning rather than the two Courts of Appeal's.

First, she points out that the CLRA excludes certain other types of transactions, but not extensions of credit. (Opp., 8:19-21, citing Cal. Civ. Code, §§1754, 1755.) That fact does not support Thompson's argument. As *Berry* said in rejecting the same argument: "It is illogical to require the Legislature to specifically exclude a particular act already excluded under the statute's general provisions." *Berry*, 147 Cal.App.4th at 233.

Second, Thompson claims that *Berry's* and *McKell's* construction is inconsistent with the statutory command to construe the CLRA liberally. (Opp., 8:21-9:2, *citing* Cal. Civ. Code,

---

it had alleged a legally insufficient claim. Moreover, the prevailing defendant had sold the plaintiff a car, so there was little question but that the CLRA applied at least to that aspect of the transaction.

[5] "[T]he courts in *Kagan* and *Corbett* did not specifically discuss whether the financial transaction at issue fell under the CLRA's definition of a 'good' or 'service' …." *Hernandez,* 2007 WL 3101250 at *5.

- 4 -

§1760.)  But, liberal interpretation and laudable purpose are no substitute for statutory words.  As the California Supreme Court said, quoting the Ninth Circuit:

> The language in which the statute is cast confines and channels its purpose.  Without due attention to the statutory terms, the statute becomes an open charter, a hunting license to be used where any … plaintiff … sees an evil encompassed in the statutes' purpose.  To the contrary, statutory interpretation must start with the words that define and cabin its laudable purposes.

*Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal.4th 163, 176 n. 9, 96 Cal.Rptr.2d 518 (2000), quoting *DELTA v. Humane Soc. of U.S., Inc.*, 50 F.3d 710, 713 (9th Cir. 1995).[6]

Finally, Thompson argues that *Berry's* and *McKell's* construction is inconsistent with Civil Code section 1770(a)(23) and (b)(1), both of which refer to specific unfair practices in soliciting loans to pay for home improvements.  Home improvements, however, are clearly "goods or services" so there is no inconsistency with *Berry's* holding that "neither the express text of CLRA nor its legislative history supports the notion that *credit transactions separate and apart from any sale or lease of goods or services* are covered under the act."  *Berry,* 147 Cal. App.4th at 233 (emphasis added).  Loans to buy home improvements are not "separate and apart from any sale … of goods or services" and so are covered by the CLRA even under *Berry's* reading of the statute.

In short, there is no "convincing evidence" that the California Supreme Court will reject *Berry* and *McKell*.[7]  Therefore, this Court must follow those decisions.  *Ryman*, 505 F.3d at 994.

---

[6] *Berry* met and refuted the same argument, stating: "We cannot, however, rewrite a statute under the guise of a liberal interpretation. Although CLRA has been interpreted broadly, courts have not expanded it beyond its express terms." *Berry,* 147 Cal.App.4th at 232.

[7] Indeed, there is "convincing evidence" that the California Supreme Court will *not* overturn *Berry* and *McKell* as those cases are consistent with decisions interpreting other states' similar statutes. *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174 (Tex.1980) [loan unconnected with any specific good or service not covered under the Texas Deceptive Trade Practices Act]; *Waite v. BancTexas-Houston, N.A.*, 792 S.W.2d 538, 541 (Tex. Ct. App. 1990) ("the lending of money is neither a good or service"); *Deerman v. Federal Home Loan Mortg. Corp.*, 955 F.Supp. 1393, 1399 (N.D. Ala. 1997) [mortgage loan not a "good" or "service" under Alabama Deceptive Trade Practices Act]; *Lamm v. AMFAC Mortgage Corp.*, 44 Or.App. 203, 204-05, 605 P.2d 730, 731 (1980) (deletion of "loans and extensions of credit" from the final version of bill "resolved any doubt" that Oregon's Unfair Trade Practices Act does not apply to mortgage loans); *Haeger v. Johnson*, 25 Or.App. 131, 135, 548 P.2d 532 (1976) [loan not a sale of goods or services under Oregon's Unlawful Trade Practices Act]; *State v. First Nat'l Bank*, 660 P.2d 402, 413 (Alaska

### III.

### A BROKER'S SERVICES IN ARRANGING A LOAN ARE NOT "SERVICES" SEPARATE FROM THE LOAN ITSELF

As a fall-back position, Thompson argues that even if the CLRA does not apply to loans, the act applies in this case because Thompson attacks a YSP which is legal only if paid for a mortgage broker's services. According to Thompson, the broker's "services" bring the entire transaction within the CLRA's scope. (Opp., 9:20-11:2.)

Thompson is wrong. As her complaint alleges, her mortgage broker only rendered services "in arranging a mortgage loan." (Compl., ¶1.) The broker obtained credit reports for Thompson and submitted her loan application, her credit scores and other financial information regarding her to Homecomings "for a funding decision" on the proposed loan. (Compl., ¶18.)

These broker "services" were nothing separate from the loan itself. As Thompson's own allegations make clear, she "sought to refinance the home mortgage on her residence." (Compl., ¶16.) In other words, she wanted a new loan to refinance her existing one. She contacted her mortgage broker solely to obtain the new loan, not to buy some other "services" the broker offered. (Compl., ¶¶16, 17.)

"[T]he end and aim of [plaintiffs'] dealings with [her broker] was to obtain a mortgage loan. [Her broker's] ancillary services served no purpose apart from facilitating a mortgage loan. Therefore, we conclude that any services provided by [the broker] were, as a matter of law, incidental to the contemplated mortgage loan; they were not an objective of the transaction. As such, [plaintiffs] were not consumers for purposes of the [DTPA]." *Maginn*, 919 S.W.2d at 167.

Since California's CLRA matches Texas' DTPA and since *Berry* and *McKell* hold the CLRA like Texas' DTPA does not cover loans, California will likely follow *Maginn's* reasoning and result. Indeed, a contrary holding would stretch the CLRA to cover every consumer transaction—contrary to the CLRA's express limitation to transactions involved "goods or services"—

---

1982) (list of proscribed activities in statute suggests that the law is "directed solely at regulating transactions involving 'products and services sold to consumers in the popular sense'").

since every transaction may be similarly dissected into its component parts to find a "service" bringing the transaction within the CLRA.

Contrary to Thompson's argument (Opp., 10:8-13), *Hitz v. First Interstate Bank*, 38 Cal. App.4th 274, 286-87, 44 Cal.Rptr.2d 890 (1995) does not require that illogical result or support application of the CLRA to the transaction alleged in Thompson's complaint. *Hitz* held that a credit card falls within the scope of Civil Code section 1671(d)—not part of the CLRA—because the card "encompass[ed] convenience services in addition to extension of credit."[8] Thompson does not allege—and cannot truthfully allege—that her home loan involved any similar "convenience services" or that she received any such services from her mortgage loan broker.

Thompson alleges only that her broker rendered services ancillary to and for the sole purpose of helping her obtain the loan. The sole end, aim and purpose of those services was to obtain a refinance loan. Thompson sought and used the broker's services for no other purpose. Without the loan, the broker's services would have been both worthless and uncompensated. Accordingly, the broker's services were "incidental to the contemplated mortgage loan; they were not an objective of the transaction" and did not draw the transaction within the CLRA's reach.

Assuming, however, that the broker's "services" were separate from Homecomings' loan, Homecomings did not offer or sell those services or otherwise participate in any separate transaction involving the provision of those services. So, even if Thompson's "services" argument made sense, it would, at most, draw the broker, not Homecomings, within the CLRA's scope.

## IV.

## THOMPSON HAS NOT ALLEGED A CLRA VIOLATION

Abandoning all but two of the CLRA's provisions referenced in her complaint, Thompson claims in her opposition that she has sufficiently alleged Homecomings violated Civil Code sec-

---

[8] As *Hitz* explained, almost half of all credit card holders pay their entire bill each month and do not use the card's credit feature. This so-called "convenience use" of the credit card affords the consumer a distinct service. It "minimizes the need to carry cash, allows the user to defer payment for goods and services for a short time, and establishes a favorable payment record that is important in credit evaluations." *Hitz,* 38 Cal.App.4th at p. 287. Stated another way, "[a] credit card user enjoys various benefits other than borrowing-primarily cashless and checkless purchasing—regardless of whether the credit feature is used." *Id*.

tion 1770(a)(5) and (16) by "using" the broker's GFE which said there would be no YSP when, in fact, there was a YSP paid when the loan closed.[9] (Opp., 11-12.)

Thompson's argument is thrice flawed. First, she alleges no representation *by Homecomings*. Instead, she avers that the *broker's* GFE mis-stated the broker's intent, saying broker would not collect a YSP when, in fact, it intended to do so. (Compl., ¶¶19, 24.) Thompson tries to overcome this obvious flaw in her argument by verbal legerdemain: she says Homecomings "used" the broker's GFE. (Opp., 11:12.) Not so. Under governing Regulation X, a lender need not provide a GFE if an independent mortgage broker has already done so. Reg. X requires that the lender check to make sure the broker has, in fact, delivered the GFE, but Reg. X imposes no duty on the lender to check the accuracy of the broker's GFE, correct any erroneous broker disclosures, or assume liability for the broker's statements.[10]

Since Thompson admits that she received a GFE from her broker (Compl., ¶¶19, 20), Homecomings was not required to give her another one, 24 C.F.R. §3500.7(b). Nor did Homecomings thereby "use" the broker's GFE or become liable for any misstatements it contained. Rather, Homecomings was simply relieved of any duty to make early disclosures under RESPA. As Homecomings was under no duty to disclose the YSP or correct the broker's disclosure, it cannot be held liable under the CLRA for any misstatement in the broker's GFE.

> [A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.

*Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824, 835, 51 Cal.Rptr.3d 118 (2006).

---

[9] The complaint also references Civil Code section 1770(a)(1)-(3), (9), (10), (14), (18) and (19). Thompson does not even try to find factual allegations in her complaint showing violation of any of those subdivisions of the statute.

[10] Reg. X provides in pertinent part: "In the event an application is received by a mortgage broker who is not an exclusive agent of the lender, the mortgage broker must provide a good faith estimate within three days of receiving a loan application based on his or her knowledge of the range of costs …. As long as the mortgage broker has provided the good faith estimate, the funding lender is not required to provide an additional good faith estimate, but the funding lender is responsible for ascertaining that the good faith estimate has been delivered." 24 C.F.R. §3500.7(b).

- 8 -

Here, Thompson has alleged no representation by Homecomings. For the reasons just stated, she has also failed to allege that Homecomings was under any duty of disclosure. Hence, Thompson cannot state a claim against Homecomings under the CLRA.

Second, the broker's statement that it would not receive a YSP is not a representation regarding the "characteristics" of any goods or services within the meaning of Civil Code section 1770(a)(5). As the statutory context makes clear,[11] "characteristics" refers to some feature of the goods or services themselves, not to the price paid for them. The CLRA's author's report on the act, published in the Assembly Journal,[12] "to indicate more fully the intent of the Legislature with respect to this measure" confirms that what is now section 1770(a)(5) (then 1770(e)) is aimed at a target far distant from Thompson's broker's alleged mis-disclosure of the intended YSP:

> This section would be violated by actually representing that there is an industry wide system of grading tires when there isn't, and actually representing that the tire being sold meets those standards. Actually representing that the tires are used or approved by Parnelli Jones or Mario Andretti would also be violations.

Third, Thompson has not alleged any facts showing that Homecomings represented to her that "the subject of a transaction" had been supplied to Thompson "in accordance with a previous representation" when it had not been. Cal. Civ. Code, §1770(a)(16). Contrary to Thompson's argument (Opp., 11:12-21), the mere fact that a YSP was paid when the broker's GFE said otherwise does not establish that Homecomings violated this subdivision. The YSP was not the "subject of the transaction"—the loan was.[13] Thompson does not claim Homecomings supplied a loan

---

[11] The word "characteristics" appears in a list of other terms all of which describe qualities of the product, not its price: "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities." Cal. Civ. Code, §1770(a)(5). Under the well-recognized canon of statutory construction known as *noscitur a sociis*, "the meaning of a word may be ascertained by reference to the meaning of other terms which the Legislature has associated with it in the statute, and ... its scope may be enlarged or restricted to accord with those terms." *Grafton Partners L.P. v. Superior Court*, 36 Cal.4th 944, 960, 32 Cal.Rptr.3d 5 (2005). Here the terms associated with "characteristics" in the just-quoted list demonstrate that the subdivision concerns qualities of the good or service, not what is paid for it. When the Legislature meant "price," it said so clearly. *See* Cal. Civ. Code, §1770(a)(12), (13).

[12] Report Relative to Assembly Bill No. 292 (Sept. 23, 1970), 4 Cal. Assembly Daily J. (1970 Reg. Sess.) p. 8464; a copy is attached for the Court's convenience.

[13] Even if the broker's services could be viewed as a separate "service" that was also the "subject" a "transaction," Thompson does not claim that those services were not supplied or were any different than as represented.

- 9 -

1  that was other than as previously represented.  She does not claim she was charged a different in-
2  terest rate or that any other term of her loan was different from that initially disclosed.  Thomp-
3  son's complaint is not that she did not receive the "subject" as represented, but that she was not
4  told Homecomings would pay her broker for its services.  The above-referenced author's report
5  on the CLRA confirms that the Legislature did not intend what is now section 1770(a)(16) (then
6  1770(n)) to apply under these circumstances:

> A seller would be in violation of this subsection by selling a differ-
> ent product than the one advertised.  The seller sells the regulation
> model rather than the luxury model advertised.

*See* attached Report, at 2.

Furthermore, as already pointed out, Thompson does not allege that Homecomings made any prior representation about the YSP.  The CLRA cannot reasonably be read to impose liability on the party providing the "subject of the transaction" for its failure to match some third party's representation regarding that subject.

For each of these reasons, Thompson has not alleged a violation of Civil Code section 1770(a)(5) or (16), and as already noted she makes no effort to show she has alleged a violation of any other subdivision of that section.

## V.

## CONCLUSION

For each of the reasons mentioned above and in Homecomings' opening memorandum, the Court should dismiss Thompson's second cause of action and strike her prayer for actual and punitive damages, which she cannot recover under her other claims.

DATED:  December 19, 2007
SEVERSON & WERSON
A Professional Corporation

By:_____/S/_____

Attorneys for Defendant
Homecomings

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

- 10 -

# TABLE OF CONTENTS

*Page*

I. INTRODUCTION ..................................................................................................1

II. THIS COURT SHOULD FOLLOW CALIFORNIA AUTHORITY IN HOLDING THAT THE CLRA DOES NOT APPLY TO LOANS..............................2

III. A BROKER'S SERVICES IN ARRANGING A LOAN ARE NOT "SERVICES" SEPARATE FROM THE LOAN ITSELF ......................................6

IV. THOMPSON HAS NOT ALLEGED A CLRA VIOLATION .........................................7

V. CONCLUSION ...................................................................................................10

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Berry v. American Express Pub., Inc.*
    147 Cal.App.4th 224, 54 Cal.Rptr.3d 91 (2007) ................................................................ 1-6

*Corbett v. Hayward Dodge, Inc.*,
    119 Cal.App.4th 915, 14 Cal.Rptr.3d 741 (2004) ................................................................... 3

*Cortez v. Purolator Air Filtration Prod. Co.*,
    23 Cal.4th 163, 96 Cal.Rptr.2d 518 (2000) ............................................................................ 5

*Daugherty v. American Honda Motor Co.*,
    144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006) ................................................................... 8

*Deerman v. Federal Home Loan Mortg. Corp.*, 955 F.Supp. 1393 (N.D.Ala.1997) ...................... 5

*DELTA v. Humane Soc. of U.S., Inc.*, 50 F.3d 710 (9th Cir. 1995) .................................................. 5

*Flatley v. Mauro*, 39 Cal.4th 299, 46 Cal.Rptr.3d 606 (2006) ......................................................... 4

*Grafton Partners L.P. v. Superior Court*,
    36 Cal.4th 944, 32 Cal.Rptr.3d 5 (2005) ................................................................................ 9

*Haeger v. Johnson*, 25 Or.App. 131, 548 P.2d 532 (1976) ............................................................... 5

*Hernandez v. Hilltop Fin. Mortg., Inc.*, 2007 WL 3101250 (N.D. Cal. 2007) ............................... 1-4

*Hitz v. First Interstate Bank*, 38 Cal. App.4th 274, 44 Cal.Rptr.2d 890 (1995) ............................. 7

*Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal.3d 582, 200 Cal.Rptr.38 (1984) ........................... 3

*Lamm v. AMFAC Mortgage Corp.*, 44 Or.App. 203, 605 P.2d 730, 731 (1980) ............................. 5

*Maginn v. Northwest Mortgage Inc.*, 919 S.W.2d 164 (Tex. Ct. App. 1996) .............................. 2, 6

*McKell v. Washington Mut., Inc.*,
    142 Cal.App.4th 1457, 49 Cal.Rptr.3d 227 (2006) .............................................................. 1-6

*Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980) ............................................................. 5

*Ryman v. Sears, Roebuck & Co.,* 505 F.3d 993 (9th Cir. 2007) .............................................. 1, 3-5

*State v. First Nat'l Bank*, 660 P.2d 402 (Alaska 1982) ................................................................... 5

*Waite v. BancTexas-Houston, N.A.*, 792 S.W.2d 538, 541 (Tex. Ct. App. 1990) ............................ 5

*Statutes*

California Civil Code
    Section 1671 .......................................................................................................................... 7
    Section 1754 .......................................................................................................................... 4
    Section 1755 .......................................................................................................................... 4
    Section 1760 .......................................................................................................................... 5
    Section 1770 ............................................................................................................. 2, 5, 8-10
    Section 1780 .......................................................................................................................... 3

# TABLE OF AUTHORITIES

*Page(s)*

*Regulations*

Code of Federal Regulations
    Title 24, section 3500.7 .................................................................................................... 8

*Other Authorities*

Report Relative to Assembly Bill No. 292 (Sept. 23, 1970),
    4 Cal. Assembly Daily J. (1970 Reg. Sess.) p. 8464 ..................................................... 9, 10