Report Relative to Assembly Bill No. 292

Assembly Committee on Judiciary

September 23, 1970

*The Honorable Bob Monagan*
*Speaker of the Assembly*

Re: Assembly Bill 292

Dear Mr. Speaker: Attached is a report on the above bill prepared by the undersigned in order to indicate more fully the intent of the Legislature with respect to this measure.

Respectfully submitted,

JAMES A. HAYES, Chairman
Assembly Judiciary Committee

---

The Consumers Legal Remedies Act is designed to provide affirmative remedies for consumers which will protect them from unscrupulous business practices while insulating responsible businessmen from spurious or vexatious lawsuits. This is done by providing the consumer a lawsuit for himself or on behalf of all other similarly situated consumers to rescind unfair business transactions, collect damages, and stop future bad practices.

Section 1770 of the Civil Code provides sixteen specific practices outlawed by the Act. By way of illustration and not limitation the following are examples of violations of each subdivision of Section 1770:

a. Selling a product *as being made by Y* when it is *really made by X*. Although passing off originally denominated unauthorized use of trade identification, today the term is also applied to covert substitution of a different brand of goods for the one requested by a customer. *Coca-Cola Co. v. Foods, Inc.*, 220 F. Supp 101.

b. There exists today no industry-wide, government or other accepted system of quality standards or grading of industry products. Within the industry, however, a variety of trade terminology has developed which, when used in conjunction with consumer transactions, has the tendency to suggest that a system of quality standards or grading does in fact exist. Typical of such terminology are the expressions "premium" "super" "supreme". The consumer, usually does not understand the significance of the absence of accepted or quality standards and is likely to assume that these expressions connote valid criteria. Since a consumer may misinterpret the meaning of such terminology, he may be deceived into buying a more inferior product because it has been given such designation.

This confusion as to commercial source, approval, endorsement, or certification of goods or services caused by trademarks, or collective marks likely to be associated with pre-existing trade symbols.

c. Representing that a product, such as tires, has the approval of Parnelli Jones, or that someone like Mario Andretti always uses brand X tire when he doesn't.

In *Vissir v. Macres*, Cal App 2 249 defendant opened up a competing florist shop with the same name as plaintiff's at plaintiff's former location after the latter had moved across the street.

d. Selling a camera as being made in Japan when it is really made in Taiwan. Or perfume concentrate imported from France and combined in the U.S. with domestic alcohol may not be sold as imported perfume. *Distributors, Inc. v. FTC*, 263 Fed 396.

e. This section would be violated by actually representing that there is an industry wide system of grading tires when there isn't, and actually representing that the tire being sold meets those standards. Actually representing that the tires are used or approved by Parnelli Jones or Mario Andretti would also be violations.

f. It would be a deceptive practice for a salesman to fail to disclose that products are reprocessed even though the reprocessed products are as good as new. *FTC v. Colgate Palmolive* 85 S. Ct. 1035.

g. A violation of this section would be an advertisement representing that bread sold under trademark "Lite Diet" was a low calorie food when in fact it contained same number of calories as other white bread but had thinner slices.



LEGISLATIVE INTENT SERVICE    (800) 666-1917

A2

 h. False assertions as to a product's inferiority.

 i. Advertising to sell a quality Y tire when you actually intend to sell a quality X tire, one of lesser quality.

 j. To lure consumers into a store, an advertisement will offer a product at a very low price, but the seller will intend to only sell one or two of the offered product. An appliance store will offer to sell a T.V. at $100 less than its regular retail price, but will only offer one or two T.V. sets.

 k. This subsection applies to spurious "fire" and "liquidation" sales as well as to fictitious price cuts.
  i.e., "Prices are slashed due to impending bankruptcy."

 l. In this case the subsection would be violated if the seller advertised "satisfaction or your money back" or "10-day free trial", as they are usually construed as a guaranty that the full purchase price will be refunded. Any conditions to the contrary should be set forth.

 m. Self-explanatory.
  Protect the innocent consumer from the unscrupulous practices of repairmen. Recommending that new brakes are needed, or that a new battery is needed when they are not.

 n. A seller would be in violation of this subsection by selling a different product than the one advertised. The seller sells the regulation model rather than the luxury model advertised.

 o. The consumer, in this instance, might be required to buy an additional product before he could receive the advertised discount, or that he buy a more expensive and high quality product than the one advertised.

 p. The prime example of a violation of this subsection is the car salesman who negotiates a deal, but before the contract can be signed, he tells the consumer that he has to get approval. Of course, when he returns, he tells the consumer that 'his boss' won't let him sell the car at such a low price, so new adjustments must be made.

 Since passage of the bill by the Legislature, representatives of business and the consumer have asked for specific statements of intention regarding two Sections of the Act.

 Jurisdiction of the Superior Court: Assuming a case and controversy within the jurisdictional limitations of the Superior Court, Section 1780 is not intended to be construed to limit actions under the Act to municipal or justice courts. That is, an action may be commenced under the provisions of the Consumers Legal Remedies Act in the Superior Court.

 Statute of Limitations: Section 1783 provides that no action may be commenced more than three years after the commission of the allegedly wrongful method, act or practice. The statute applies to individual and class actions. In order to be included within the class, the Legislature intended that each member of the class would have been injured by a violation of Section 1770 within three years of the commencement of the action. Thus, if A is damaged in 1965, and B,C,D,E,F, and G are injured in 1968, class action may be commenced in 1970 [*] but A cannot be included within the class.

 The Consumers Legal Remedies Act has charted a new course for protection of the consumer. There is no state or federal precedent for much of the substantive or procedural provisions of the measure. The Legislature therefore anticipates controversy and debate will attend application of the measure during the oncoming months. This in mind Section 1760 was included in the bill to give jurists and advocates an insight into the legislative intent underlying the Consumers Legal Remedies Act. Simply the Title should be construed liberally to promote the objective of efficient and economic consumer protection against unfair and deceptive business practices.

---

\* This is an error. Section 1756 of the act provides the substantive and procedural provision of the act shall only apply to actions filed on or after January 1, 1971.

A3

LEGISLATIVE INTENT SERVICE   (800) 666-1917